THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LOUIS BELSKY, Defendant.

County Court, Kings County, July 30, 1941.

*William O'Dwyer, District Attorney [J. V. Keogh* and *L. E. Leventhal* of counsel], for the plaintiff.

*Michael Kern,* for the defendant.

BRANCATO, J. On November 30, 1940, an assistant district attorney with several members of the police force seized from defendant's office certain books, papers and records used by him in his business and personal affairs. This seizure was effected under the guise of a subpœna *duces tecum* but in a manner suggestive of a raid. All of the articles seized, however, were within a fortnight thereafter returned to the defendant pursuant to an order of one of the judges of this court who vacated the service of the said subpœna and declared the search and seizure of the papers in question unauthorized by law. In May, 1941, the grand jury of this county indicted the defendant for perjury alleged to have been committed by him when being examined by an agent of the State Tax Commission for income tax evasion. The defendant now makes this motion for an order to suppress any evidence obtained by the district attorney through the illegal seizure of defendant's said documents and to prohibit its use against him in his trial for perjury which the district attorney proposes to do. The motion must be denied.

The rule is undisputed in this State that " the court, when engaged in trying a criminal cause, will not take notice of the manner in which witnesses have possessed themselves of papers, or other articles of personal property, which are material and properly offered in evidence. * * * the manner in which the witnesses for the People became possessed of the documentary evidence is a matter of no importance." (*People* v. *Adams*, 176 N. Y. 351; affd., 192 U. S. 585; *People* v. *Defore*, 242 N. Y. 13.)

I am not in accord with defendant's contention herein that the rule thus enunciated by the Court of Appeals in the *Adams* case (*supra*) applies only to articles of contraband, *i. e.*, things outlawed and subject to forfeiture and destruction upon seizure, such as counterfeit money, gambling devices, blackjacks, etc., but not to non-contraband, as for instance, private papers, records and other documents of a personal nature. An unlawful seizure of lawfully possessed property (non-contraband) may justify its return to the person from whom it was so seized, but does not vitiate its evidential value in a criminal prosecution against him. Privileges against self-incrimination and immunity from unreasonable search are not identical (*People* v. *Chiagles*, 237 N. Y. 193–198); and the prohibition of the search does not anathematize the evidence yielded through the search. (*People* v. *Defore, supra*, 23.) In the *Adams* case (*supra*) the court had under consideration contraband, consisting of gambling implements which had been seized by virtue of a search warrant issued therefor, and also certain books and papers relating to defendant's private affairs not contemplated, however, in the search warrant and seized " without authority of law." (*People* v. *Defore, supra*, 19.) The court in its decision specifically considered " the effect of seizing the private papers of the defendant," and it was in relation to this unauthorized seizure of defendant's personal effects that it proceeded to enunciate the rule above quoted. (*People* v. *Adams, supra*, 358.)

The Federal rule as to the use of personal property illegally seized by a Federal agent as evidence in a criminal case is quite different from that followed in our State courts. Under the Federal rule, an unauthorized seizure of personal property renders it incompetent for evidential purposes, regardless as to whether the said property is contraband or not. (*Weeks* v. *United States*, 232 U. S. 383; *Silverthorne Lumber Co.* v. *United States*, 251 id. 385; *Gouled* v. *United States*, 255 id. 298; *Amos* v. *United States*, Id. 313; *Agnello* v. *United States*, 269 id. 20.) It was this rule which the Court of Appeals was strongly urged to follow in the *Adams* case, but although the United States Constitution and the Constitution of the State of New York contain identical language to the effect that no person

shall be compelled in any criminal case to testify against himself, the court refused to adopt the Federal rule and decided instead that " the manner in which the witnesses for the People become possessed of the documentary evidence is a matter of no importance."

It is further argued by the defendant that this motion does not come within the purview of the rule above quoted from the case of *People* v. *Adams* (*supra*) because, says the defendant, the seizure of the private papers contemplated in that case was incidental to defendant's arrest and, therefore, lawful (*People* v. *Chiagles, supra*), while all of the articles of personal property in the case at bar were searched for and seized from the defendant by means of unlawful process, *i. e.*, an unauthorized subpœna *duces tecum*.

I do not read the decision in the *Adams* case in the same light as the defendant contends. The legality or illegality of the seizure was not a controlling factor in the admissibility as evidence of the property seized and the court disregarded that element. It did not justify its decision upon the theory that the seizure was incidental to defendant's arrest and, therefore, lawful. Quite the contrary, the court refrained from making any reference thereto except to say that " We do not wish to be understood as expressing an opinion regarding the seizure of defendant's private papers." (*People* v. *Adams, supra*, 358.) It was Mr. Justice CARDOZO who twenty years later, writing the opinion in the *Defore* case, wherein the question before the court was, " whether evidence of criminality, procured by an act of trespass, is to be rejected as incompetent for the misconduct of the trespasser," said: " The question is not a new one. It was put to us more than twenty years ago in *People* v. *Adams* (176 N. Y. 351), and there deliberately answered. A search warrant had been issued against the proprietor of a gambling house for the seizure of gambling implements. The police did not confine themselves to the things stated in the warrant. Without authority of law, they seized the defendant's books and papers. We held that the documents did not cease to be competent evidence against him though the seizure was unlawful." (*People* v. *Defore, supra*, 19.)

In the opinion of Mr. Justice CARDOZO the statement is unequivocal that the seizure of the private papers involved in the case of *People* v. *Adams* (*supra*) was tainted with official trespass. The papers were nevertheless adjudged to be competent evidence.

Defendant's objection that to admit information against him in his coming trial, gathered from illegally seized books and papers, the guaranties against self-incrimination become mere forms and their protection only an illusion, was first advanced in the *Defore* case (*supra*, 24) and found wanting in persuasive force. We agree

with the defendant that the service by an assistant county or State prosecutor of what purports to be a subpœna *duces tecum* in a " John Doe " proceeding, arbitrarily directing an individual to produce " forthwith " all of his business and private books and papers before a grand jury, with the added circumstance that the service of the said subpœna is effected with the assistance of several armed members of the police force to expedite the " forthwith " production of the desired books and papers, is too suggestive of a raid to be seriously mistaken for an orderly service of process. Yet evidence thus highhandedly obtained may be used even in a criminal trial under the Federal jurisdiction. (*People* v. *Defore, supra; Weeks* v. *United States, supra,* 398; *Schroeder* v. *United States,* 7 F. [2d] 60; *United States* v. *One Ford Coupe,* 3 id. 64.) We are not unmindful that the possibility of preventing an invasion of one's home or office by resisting unauthorized searching officers or by later suing them for damages as trespassers, is rather remote and the process ineffectual. In fact, the first method suggested might even be dangerous; the second, unprofitable. But be that as it may, the decisions in the *Adams* and *Defore* cases leave no room for speculation regarding the rule which our State courts should follow with respect to the competency of illegally seized property as evidence in a criminal case. These decisions, at variance with those of the United States Supreme Court, are nevertheless decisive in this State and formulate the policy that the greater protection afforded by the Federal rule to the individual whose privacy has been invaded by a Federal agent, does not compensate the disproportionate loss of protection to society. In other words, the criminal must not go free simply because the constable has blundered. Legislative enactment alone can change this policy in this State. Motion denied. Submit order.