THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BETTY REILLY, Appellant.

Court of Special Sessions of the City of New York, Appellate Part, First Department, July 6, 1951.

*Samuel Markowitz* and *Barney Gorman* for appellant.

*Frank S. Hogan, District Attorney (Jack M. Cotton* of counsel), for respondent.

*Per Curiam.* The defendant was convicted of a violation of paragraph (c) of subdivision 4 of section 887 of the Code of Criminal Procedure (vagrancy) and was sentenced to sixty days in the workhouse. The complaint charges that the defendant loitered in front of premises at 119 West 45th Street in the county of New York and " solicited one ———— ————, of New York City for the purpose of prostitution and offered to commit an unlawful act of sexual intercourse with him for the sum of $10.00, which she demanded and received. That she accompanied him to a bedroom located in said hotel where said unlawful act was to be committed."

The People called a police officer who testified that on April 27, 1951, at about 7:15 P.M., outside premises 1520 Broadway, New York City, he saw defendant talk to two unknown men and that then she approached a third man who went with the defendant to a hotel room and had an act of sexual intercourse. There was testimony that the officer found $10 on a bureau next to the bed in the room.

The People called as a witness the man who accompanied the defendant to the hotel. He testified that he had known the defendant for a few years and that she was his friend and that they had an appointment to meet on the night of the arrest. He further testified that the defendant did not solicit him for the purposes of prostitution. The evidence is insufficient to prove that the defendant did loiter in or near premises 119 West 45th Street in the county of New York for the purpose of inducing an act of sexual intercourse. Judgment reversed. Complaint dismissed. Defendant discharged.

OLIVER, J. (concurring). Here is a case where a man met a woman on the street. A policeman observed them but did not hear their conversation. They walked down the street, entered a hotel, registered and went to a room. A short time later, the policeman in plain clothes, secured a key from the clerk,

unlocked the door of the room, conducted a search of the place, questioned the man and woman, arrested her for soliciting on the street and held the man as a witness. The officer had no warrant to enter the premises.

Section 12 of article I of the Constitution of New York State reads in part as follows:

" The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 8 of the Civil Rights Law of the State is identical, carrying out by legislation the provisions of the Constitution.

But what does the Constitution and the law in reference to search and seizure amount to in the State of New York? They are known as the cornerstone of the Bill of Rights. But they are as dead as the cornerstone of any funeral parlor.

The Court of Appeals in the cases of *People* v. *Defore* (242 N. Y. 13) and *People* v. *Richter's Jewelers* (291 N. Y. 161) stated that the courts are not concerned about how evidence is secured but that evidence, no matter how secured, is admissible against a defendant. So evidence secured without a warrant is as good as evidence secured with a warrant. The police do not bother about getting warrants. They all know the rule of evidence, so laugh at the Constitution. But the Court of Appeals laid down a plan for safeguarding the civil liberties of the people. It provided for sanctions so that the rule of evidence would not repeal and destroy the Constitution. It said that a citizen has a right to resist the unlawful invasion of the police. But as a practical matter when three or four police giants, armed with guns, break into a home, the prudent citizen, allergic to plastic surgery, gives up this constitutional right very rapidly. Therefore that sanction is of little use in preserving the " rights of the people ". As a second sanction the court held that a citizen has a right to sue the police for trespass. That sanction has failed to restrain the police because few citizens, confronted by the long delay in the trial courts, avail themselves of the right to sue underpaid policemen who obey the orders of their superiors. The third and fourth sanctions are the vital ones. The court directed the police chiefs to discipline officers who disobeyed the order of the Constitution to secure warrants and suggested that the District Attorneys prosecute

them criminally. But these sanctions have been turned into a farce. The police all over the State, with the co-operation of the District Attorneys have sunk these sanctions without a trace. They have abandoned the use of warrants and rely on force. Therefore, we are governed by the rule of evidence that holds that " the sky is the limit " as far as the right of the police to enter people's homes day or night without a warrant is concerned. " The right of the people to be secure in their persons, house, papers, and effects from unreasonable searches and seizures, shall not be violated ", written in the Bill of Rights of the State Constitution, might as well be written by a sky writer, in a storm, at night, for all it is worth.

The case at bar is merely a mild example of how the liberties of New Yorkers are destroyed by the police and the courts. The rule of evidence subordinates the courts to the lawlessness of the police. We are supposed to ratify the boldest and most lawless type of rough-house the police engage in. The People believe that the search and seizure clause of the Federal Constitution protects them against unlawful search and seizure by the police. Nothing could be further from the fact. It has been ruled by the United States Supreme Court that the Federal search and seizure clause restricts only Federal officers and Federal courts. (*Wolf* v. *Colorado,* 338 U. S. 25.) State and city police and all State and city courts are governed by the search and seizure clause in the State Constitution. The Federal clause is interpreted by the Federal courts to mean exactly what it says. (*Weeks* v. *United States,* 232 U. S. 383.) The State search and seizure clause is interpreted to mean the exact opposite to what it plainly says. (*People* v. *Defore,* 242 N. Y. 13, *supra.*)

In the case at bar the police officer secured all of the evidence offered at the trial, lawlessly without warrant. Judges are compelled to choose whether they will support a rule of evidence which, in the absence of sanctions strictly enforced, destroys the Constitution, or keep their oaths to support and defend the plain meaning of a section of the Constitution which is easy to understand.

For these reasons I vote to reverse the conviction.

PERLMAN and LOSCALZO, JJ., concur in *Per Curiam* opinion; OLIVER, J., concurs in result in opinion.

Judgment reversed.