Van Voorhis, J. (dissenting).
The change in procedure in the trial of criminal actions in New York State which is necessary in order to conform to • the ruling of the United States *79 Supreme Court in Jackson v. Denno (378 U. S. 368) is relatively minor, insofar as it applies to subsequent trials. Its profoundly disruptive effect arises from its application to criminal actions, like the present, which have terminated and in which the appellate process has been exhausted. Daniel Webster said that the past, at least, is secure. That statement would not have been uttered if he had known of Jackson v. Denno, since it renders uncertain and insecure the confinement of every living convict wherever, in the changing winds of current opinion, his constitutional rights have been violated at the time of his trial. The concept of due process of law in criminal matters is constantly expanding, with the consequence that there are few points of criminal procedure, or, for that matter, of substantive laAV, which are not deemed to partake of it. This means that, as a result of the expansion of the Federal writ of habeas corpus in 1953 by the decision in Brown v. Allen (344 U. S. 443), few prisoners are in confinement whose convictions may not be drawn in question in the Federal courts on account of some alleged infringement of due process or other constitutional protection — not merely the particular kind of lack of due process held to have existed in Jackson v. Denno — regardless of whether the point was raised in the trial court and without regard to the lapse of time since the conviction. One might consider that this denied the equal protection of the laws to those who have already been executed for capital offenses, especially while the law as then announced by the United States Supreme Court was opposite to Avhat it is noAv. The past, as it seems to me, cannot effectually be remolded according to present standards contrary to those established by authoritative decisions in effect at the time. The substantial question before us on this appeal is whether to expand the Noav York State postconviction remedies of habeas corpus or eoram nobis to match the recently broadened scope of Federal habeas corpus as exemplified by Brown v. Allen and Jackson v. Denno. For more than 10 years after Brown v. Allen avc adhered to the established New York State common law and statutory rules restricting habeas corpus to testing the jurisdiction of the court over the person of the defendant and the crime charged (People v. Schwartz, 12 N Y 2d 753; Matter of Morhous v. Supreme Ct., 293 N. Y. 131; People ex rel. Carr v. Martin, 286 N. Y. 27) and limiting coram nobis, with a feAv exceptions not *80 relevant here, to matters which could not be raised on appeal (People v. Brown, 13 N Y 2d 201; People v. Howard, 12 N Y 2d 65). We are laid under no more obligation by Jackson v. Denno to expand our traditional postconviction remedies of habeas corpus or coram nobis — which are broad enough as they are — than we were 10 years earlier by Brown v. Allen. As the cases which I have cited demonstrate, we have repeatedly declined to do this since Brown v. Allen was decided. There is no more reason on account of which we should do so, in my judgment, because of Jackson v. Denno. As the Supreme Court said in Missouri v. Lewis (101 U. S. 22, 31): “ We might go still further, and say, with undoubted truth, that there is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. * * * The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies.” (John v. Paullin, 231 U. S. 583, 585; 14 Am. Jur., Courts, p. 253.)
The existing New York procedure has provided opportunity all along to defendants in criminal cases represented, as appellant Huntley was, by counsel, to object at their trials to the consideration by juries of the voluntariness of their confessions until after that issue had been ruled upon preliminarily by the Trial Judge as a question of fact, and, if overruled, to review the point upon appeal. Defendants in Huntley’s situation have, therefore, not been foreclosed of opportunity to litigate the point decided in Jackson v. Denno and, if they have declined to do so or have done so unsuccessfully, the State of New York is under no obligation placed upon it by the United States Constitution to provide postconviction remedies, even where due process is involved, to review questions that could have been raised by appeal: not, that is, unless adversary methods are to be abandoned in criminal trials and paternalistic supervision by courts substituted therefor.
It is true that technically this case comes before us on appeal from a judgment of conviction, but not until after leave to appeal had been denied under section 520 of our Code of Criminal Procedure. After the decision by the Supreme Court in Jackson v. Denno, denial of leave was revoked and permission to appeal *81 was granted, as it was in People v. Muller (11 N Y 2d 154, cert. den. 371 U. S. 850), solely to enable us to determine whether the Jackson v. Denno ruling should be applied to criminal actions where the normal appellate process had been exhausted. People v. Muller held that Mapp v. Ohio (367 U. S. 643) would not be applied so as to reopen a conviction where the normal appellate process had been exhausted. The only reason on account of which the court majority is applying Jackson v. Denno here, contrary to what was done with Mapp v. Ohio in the Muller case, is, as it .seems to me, that Mapp v. Ohio went up on appeal from the judgment of conviction, whereas Jackson v. Denno was decided on the Federal postconviction remedy of habeas corpus. It is for that reason only, as I read the majority opinion, that People v. Muller is being overruled in this instance and the court is proceeding to the merits of the appeal after the normal appellate process has been exhausted. On that reasoning, I suppose that People v. Muller would be overruled on its own facts if Federal habeas corpus were held, as it may be, by the Supreme Court to extend to the situation presented in Mapp v. Ohio, as well as the one in Jackson v. Denno. It is clear from the majority opinion, as it seems to me, that People v. Muller would have been followed and not overruled on this appeal if the court had not decided as a matter of policy to broaden our State remedy of coram nobis to correspond to the scope of Federal habeas corpus as enlarged by Brown v. Allen and Jackson v. Denno. Therefore I have addressed myself in this dissenting opinion to whether our State postconviction remedies should be expanded in that manner since, although coram nobis and habeas corpus are not here directly involved, the enlargement of coram nobis is being regarded as the actuating principle of the decision.
In general, with exceptions based on special circumstances, we have endeavored to follow Federal precedent in questions of practice and procedure although not compelled by the Constitution to do so. Whether we broaden coram nobis to correspond to the jurisdiction exercised under the Federal writ of habeas corpus is a question of State policy not of constitutional mandate. If we do not do so, the Federal courts may issue their process as they have in the past where they hold that State remedies to redress a Federal right have been exhausted at the *82 time when application for Federal habeas corpus is made (e.g., Young v. Ragen, 337 U. S. 235; Fay v. Noia, 372 U. S. 391 passim, especially pp. 424-425). If we decline to alter our State postconviction remedies in manner capable of resulting in the discharge from prison of any living criminal who has been legally convicted, no matter how long ago, because the Supreme Court has held its earlier decisions to be erroneous (cf. Jackson v. Denno, supra; Fay v. Noia, 372 U. S. 391; Townsend v. Sain, 372 U. S. 293; Sanders v. United States, 373 U. S. 1; Brown v. Allen, 344 U. S. 443), we would simply be allowing, as we have before, post-conviction matters in excess of our postconviction jurisdiction to pass into the Federal courts. States have undoubted power to limit their own jurisdictions, without constraint from the Federal courts. That is an inherent part of our Federal system. It goes without saying that the State courts will1 follow Jackson v. Denno and the other Supreme Court decisions in all subsequent litigation, and in litigation which is still pending where the point is raised and the appellate process has not been exhausted. We are likewise obligated, of course, to follow the mandates of the Federal courts in cases where Federal writs of habeas corpus have issued and been sustained. But to attempt to apply these changing principles to all of the water that has gone over the dam, to reconstruct of our own accord all past and closed criminal trials to fit the pattern of what is constitutional law now but was not when they were conducted and decided, is too much to expect of any State court. To say that the whole criminal law of procedure is in a state of flux is an understatement. There are certain to be further changes in Federal decisions, and for us to attempt to copy them now where we are not obliged to do so by the Constitution or the Supreme Court is to invite even greater confusion. We are not legally or morally obligated to assume this responsibility for jail deliveries, nor will doing so, in my opinion, accomplish either law or justice. If the Federal courts are required to deal with these serious problems which they have created, instead of creating them and transferring responsibility for their solution to the States, it is probable that workable solutions will be reached sooner than under conditions of divided responsibility between Federal and State tribunals. That would *83 at least keep the lines of responsibility distinct, and help to prevent the State courts from becoming mere subordinate instrumentalities of the Federal judicial establishment.
Jackson v. Denno, like Mapp v. Ohio, is undoubtedly retroactive in the sense that it applies to transactions that occurred before it was decided, and while an opposite rule was the law of the land (People v. Loria, 10 N Y 2d 368); but the legal fiction, contrary to fact, that the law always was what it is now does not ordinarily apply to civil or criminal actions which have been finished, and in which the appellate process has been exhausted, at the time of the new decision altering the former rule. Although objection was made on the trial of Jackson v. Denno to the admission in evidence of the confession of the accused, on the ground that it was involuntary, no objection was raised to the submission of the question of voluntariness to the jury instead of calling upon the Trial Judge to decide it preliminarily as a question of fact. The same situation exists in the present record. The impact of Jackson v. Denno is, therefore, to allow review by Federal habeas corpus even where the attention of the Trial Judge was not called to the contention that the time-honored New York practice was erroneous. This presents the danger that every judgment of conviction after trial, whenever entered, is subject to being vacated if a confession or admission against interest was introduced in evidence, although counsel for the accused has not raised the point that its voluntariness should first be adjudged by the Trial Judge as a question of fact. To be sure, there would be little reason for a defendant’s lawyer to anticipate that such a demand would be successful inasmuch as the law of the State had been otherwise for a hundred years, and was sanctioned by the Supreme Court of the United States in Stein v. New York (346 U. S. 156). We held in People v. Friola (11 N Y 2d 157) that an objection had to be taken at the trial on constitutional grounds to the introduction of allegedly illegally obtained evidence, but Chief Judge Desmond dissented in an opinion concurred in by Judge Fuld in which it was objected (p. 161): “We are now saying that we will not apply the new law in a pve-Mapp case unless on the trial the defendant’s counsel did what was then futile, unreasonable *84 and contrary to the then law, that is, object to the admission of testimony which under the unquestioned New York law and Federal law (People v. Defore, 242 N. Y. 13, cert. den. 270 U. S. 657; Wolf v. Colorado, 338 U. S. 25) was clearly admissible. So the client whose counsel took a groundless objection gets the benefit of the latter (Mapp) change in law while the client whose lawyer refrained from mouthing a meaningless objection is prejudiced because his lawyer took the correct position.”
The fear is not groundless that this reasoning was acted upon in Jackson v. Denno, where the point on which the case was decided wias not raised at the trial, and in Townsend v. Sain (372 U. S. 293, 322) referring to Pay v. Noia, in the same volume at page 438. If so, our court is now extending our postconviction remedy of coram nobis to become coextensive with a Federal writ under which criminal convictions can be vacated whenever they occurred, if ,any kind of a constitutional right as now defined has been infringed, even though the point was not raised and the time to appeal has expired. This could put at hazard many prior convictions. The disagreement in our court is not over that, but concerns whether as a matter of comity or State policy we should change our post conviction remedies or leave redress in such instances to the Federal courts. In my judgment we should do the latter.
I would say a word in conclusion about the iscope of this problem. If Jackson v. Denno situations were all that we are confronted with, the problem would be of lesser dimensions. Actually Jackson v. Denno involves little practical change in criminal trials in New York State. In most instances the decision of preliminary questions of fact conditioning the admissibility of evidence has been for the Trial Judge (People v. Marks, 6 N Y 2d 67, 74-76). The practice for testing the voluntariness of confessions or admissions against interest of accused persons, although ingrained in the legal history of the State, was treated as an exception to the general rule (People v. Marks, supra, pp. 75-76). Even there the practice has been for the Trial Judge to take testimony on the voir dire, including that of the defendant if he wishes, to enable the trial court to determine out of the presence of the jury whether the confession or admission was coerced or involuntary as matter of law, and, indeed, *85 whether a determination that it was voluntary would be against the weight of evidence (People v. Doran, 246 N. Y. 409, 416-418, 428, and cases cited). If we were to adopt the orthodox rule whereby the voluntariness of the confession is adjudicated by the Trial Judge only, and not submitted to the jury, a greater difference might ensue, but under the Massachusetts rule, proposed to be adopted by our court majority, if the Trial Judge rules that the confession or admission is voluntary as a question of fact, his finding is not final but the same issue is again submitted to the jury. This involves all the refinements of having the jury distinguish between the voluntariness and the truth of confessions or admissions and the injustice of forcing a defendant to testify who has a criminal record, sought to be obviated or minimized by Jackson v. Denno, and, moreover, the average Trial Judge, if he knows that the matter will be decided finally by the jury anyhow, is likely to find that it was voluntary as a fact by applying similar standards of judgment to those which he would have used under the old law in determining whether or not it would be against the weight of the evidence to decide that it was voluntary. The difference, in common practice, is likely to be more verbal than real. The significance of this is that, if any past conviction may be vacated on this slender ground, the same will be true of many other and perhaps more serious past infractions of what are regarded as constitutional rights under the wisdom of today.
The past cannot be reformed in the image of the present. Through lapse of time witnesses have died or disappeared, prosecuting officers and Judges who knew the circumstances have left the scene, exhibits and other records have been destroyed or disappeared. Finality must enter somewhere, for similar reasons to those given by Mr. Justice Story in Bell v. Morrison (1 Pet. [26 U. S.] 351, 360) regarding the Statute of Limitations which he and his court characterized as “ a wise and beneficial law * * * to afford security against stale demands, after the true state of the transactions may have been forgotten, or be incapable of explanation ’
In my view the judgment of conviction should be affirmed for the reason that the appellate process has been exhausted at the time of the decision in Jackson v. Denno (People v. Muller, 11 N Y 2d 154, cert. den. 371 U.S. 850, supra).
*86 Judges Dye, Fuld, Burke and Bergan concur with Chief Judge Desmond; Judge Van Voorhis dissents in an opinion in which Judge Scileppi concurs.
Determination of appeal withheld and case remitted to the Supreme Court, New York County, for further proceedings not inconsistent with the opinion herein.