Zenada GREER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Nov. 23, 1984.

V. Gene Lewter, Fayette County Legal Aid, Inc., Lexington, for appellant.

David L. Armstrong, Atty. Gen., Gerald Henry, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWARD, LESTER and WHITE, JJ.

LESTER, Judge.

This is an appeal from a judgment of the Fayette Circuit Court which found the appellant, Zenada Greer, guilty of robbery in the first degree.

The evidence reveals that on January 14, 1983, Skuller's Jewelry Store was robbed by a black female and a black male who threatened the use of a handgun. James Russell, an employee of Skuller's, testified that he had cleaned the showcases off on the morning of the robbery. Officers who were called to the scene following the crime, then testified that they obtained several partial palm prints off of these counters. One of the palm prints was later identified as being that of the appellant, Zenada Greer.

Appellant filed a pretrial motion to suppress the use of the palm prints taken from her on the ground that they were obtained through an illegal detention. A suppression hearing was held at which Detective Borne of the Lexington Police Department testified that he received information from an informant that appellant was involved in the robbery. Borne admitted that he had no probable cause at this time to obtain an arrest warrant for the appellant, and that issue is not raised on appeal.

However, based on the above information, the detective testified that he went to appellant's mother's house where Zenada was located and asked her if she would accompany him to the police station. Borne stated that he would have left her at home if she had refused to accompany him since he had no probable cause and she was not being arrested.

Appellant testified that it was her understanding that she was supposed to go and that she gave him "no static about it," but that he did not give her any option whether she could or could not go. Her mother testified that she was also present and was under the impression that appellant was being arrested.

Despite appellee's claim that this case is distinguishable. We believe appellant is correct in stating that we are governed by *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

In *Dunaway*, a police detective received information implicating the defendant in an attempted robbery and homicide, but did not have "enough information to get a warrant." *Id.* at 203, 99 S.Ct. at 2251. Nevertheless, police officers located Dunaway and asked him to accompany them to the police station where he was questioned by officers and later made incriminating statements.

Although the defendant in *Dunaway* was not told that he was under arrest, the Supreme Court held:

There can be little doubt that petitioner was "seized" in the Fourth Amendment sense when he was taken involuntarily to the police station. *Id.* at 207, 99 S.Ct. at 2253.

This case is a virtual replica of *Dunaway*. Appellant was taken to the police station in the hopes that something would turn up. Her prints were taken and compared with those obtained at the scene of the crime and she was then placed under arrest.

If appellant did not go voluntarily, but was illegally detained or seized, then the palm prints obtained from her as a result of that action were not properly admitted and the motion to suppress should have been granted. We believe this to be the case.

The United States Supreme Court has recently pointed out that the "substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern." *U.S. v. Leon,* 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The well-known adage of Justice Cardozo that "the criminal is to go free because the constable has blundered" has represented, oftentimes, a heavy cost for society to pay. *See People v. Defore,* 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926) and *Martin v. Commonwealth,* Ky., 592 S.W.2d 134 (1979). Recent cases have held that "unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury." *U.S. v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980); *U.S. v. Leon, supra; Massachusetts v. Sheppard,* 468 U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

Yet, in spite of this current reshaping of the rule, we are unaware of any cases which have carved out an exception that would allow us to disregard *Dunaway.* In fact, *Dunaway* was essentially reaffirmed in *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982), where the Court held a confession obtained through an illegal arrest must be excluded as intervening events did not break the causal connection between the illegality and the confession. *I.N.S. v. Lopez-Mendoza,* 468 U.S. ——, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), recently held that the exclusionary rule did not apply in civil deportation proceedings, where an admission against interest was made following an unlawful arrest. However, we view that opinion as being based primarily on the fact that it involved a purely civil action rather than the typical criminal action that we have here.

Of course, the Commonwealth seeks to characterize the transporting of appellant to the police station as either "consensual" or "voluntary." This same argument was made and rejected by the Court in each of the cases discussed above. Furthermore, *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), points out that statements made during a period of illegal detention are inadmissable even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will. *Id.,* 460 U.S. at 491, 103 S.Ct. at 1319, 75 L.Ed.2d at 229, *Dunaway, supra,* 442 U.S. at 218, 99 S.Ct. at 2259.

While Detective Borne stated that he would have left her at home if she had refused to accompany him, both appellant and her mother testified to a "show of official authority" that could "lead a reasonable person to believe that he was not free to leave." *Royer, supra; U.S. v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

Consequently, we are compelled to direct suppression of the prints as the fruit of the poisonous tree, and the judgment must be reversed for that reason. *Martin, supra* at 140.

Our disposition of this issue makes it unnecessary to discuss Greer's other assignments of error, with the exception of the in-court identification of the appellant by James Russell. Our review of the record reveals that this matter was not objected to or challenged before the trial court, and it cannot therefore be considered on appeal. *Brown v. Commonwealth,* Ky., 551 S.W.2d 557 (1977).

The judgment of the Fayette Circuit Court is reversed and the cause remanded for proceedings consistent with this opinion.

All concur.