STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. SALVATORE MERRA AND SALVATORE RANNELLI, PLAINTIFFS IN ERROR.

Argued December 16, 1926—Decided May 16, 1927.

1. A verdict returned by a jury "We find M. guilty of murder in the first degree. We find R. guilty of murder in the first degree and recommend life imprisonment," held to be a verdict of murder in the first degree, without recommendation, as against M.

2. The fact that the prosecutor of the pleas had some days before the trial of an indictment made a speech before the state bar association in which he attacked the character of one of the defendants, and that such speech had been printed in a newspaper circulating in the county in which the trial was had, was not sufficient basis of a challenge to the array of jurors, where there was nothing before the court at the time when the chal-

lenge was interposed which was even suggestive of the fact that a single member of the panel had ever read the speech.

3. On cross-examination of a witness as to his conviction of crime, such facts may be brought out as would be brought out if the conviction had been proved by the production of the record thereof, which would include the sentence imposed upon the finding of guilty.

4. Property procured by an unjustifiable search and seizure is admissible in evidence, if evidential *per se.*

On error to the Essex County Court of Oyer and Terminer.

For the plaintiffs in error, *Felix Forlenza* and *Alexander Simpson.*

For the state, *John O. Bigelow,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiffs in error were convicted upon an indictment charging them with the felonious killing of one Theodore Conway, who was an assistant paymaster in the employ of the Public Service Corporation. His murder occurred on the 4th of June, 1926, and, as the state charged, in an attempt by the plaintiffs in error and others to rob a pay car of the corporation, of which he was in charge, while it was standing at the corporation's car barn, at the corner of Central avenue and Fourteenth street, in the city of Newark. The fact that Conway was killed in an attempt to rob the car is not in dispute. At the close of the trial the jury returned the following verdict as certified to us by the presiding judge of the Essex Oyer and Terminer: "We find Salvatore Merra guilty of murder in the first degree. We find Salvatore Rannelli guilty of murder in the first degree and recommend life imprisonment." This certification was made to us in compliance with our mandate directed to the Essex Oyer and Terminer. Our action in this regard was the result of an application of the prosecutor of the pleas based on the statement that the transcription of the verdict, as contained in the record sent up to us in

obedience to the command of our writ, was erroneous, and was taken after a hearing upon the application was afforded both counsel for the state and counsel for the plaintiffs in error. Upon the rendition of the jury's verdict, as so certified, the trial court imposed sentence of death upon Merra and of life imprisonment upon Rannelli.

The first ground upon which we are asked to reverse the conviction before us deals with the legality of the death penalty imposed upon Merra. The claim is that it was in disregard of the declaration of the jury, in that by its verdict it recommended him, as well as Rannelli, to life imprisonment. We consider this contention to be without merit; in other words, that the verdict contained no such recommendation. As rendered, it is divided into two separate sentences by the period which follows the finding as to Merra's guilt. The first of these sentences deals exclusively with that finding. Having declared its conclusion with relation to the charge laid in the indictment against Merra, the jury then proceeded, in a new sentence, to declare its finding with relation to the charge against Rannelli, and, having done so, proceeded in the same sentence to recommend life imprisonment. The period indicates that the jury had finished its pronouncement, so far as its verdict related to Merra, and that it then declared its conclusion as to its finding upon the charge laid against Rannelli, and as to the punishment which should be inflicted upon him. And that this is not only the grammatical construction of the verdict, but that the verdict was clearly understood as expressing the purpose which that construction indicates is made manifest not only by the conduct of the trial court in pronouncing sentence of death upon Merra, but also by the conduct of the latter's counsel in sitting by and allowing such a sentence to be imposed without protest.

The next ground upon which a reversal is sought is based upon the contention that there was harmful error in the refusal of the trial court to sustain the challenge of defendants' counsel to the array of jurors. The challenge was made immediately upon the moving of the trial of the cause by

the prosecutor of the pleas. It was based upon the ground that the latter, some days before, had made a speech to the State Bar Association, in which he attacked the character of one of the defendants; that this speech was printed in the "Newark Evening News;" and that, as a result of the publication, the defendants could not have a fair trial, for the reason that the whole panel had been tainted after reading the article. We consider that the basis of the challenge was without legal merit; in other words, that the assertion of counsel that the whole panel had been tainted by reading the article was not supported by the fact, for there was nothing before the court at the time when the challenge was interposed which was even suggestive of the fact that a single member of the panel had read it. In the case of *Baus* v. *Trenton and Mercer County Traction Co.,* 102 *N. J. L.* 1; affirmed on opinion in 102 *Id.* 712, counsel for the defendant having moved to withdraw a juror and direct a mistrial, just before the trial of the case was concluded, because of the fact that a newspaper article, the publication of which was said to have been instigated by plaintiff's counsel, had been printed a day or two before the trial began and contained matter injurious to the defendant, the motion was denied. It was held on review that the mere publication of the article, standing alone, afforded no ground for granting the motion, the court declaring that—

"If it had been shown that the article had been read by the members of the jury, or some of them, the situation would have called for the exercise of judicial discretion by the trial court in dealing with the motion, but, as there was nothing before the court to indicate that such was the case, the motion was properly denied."

The next ground for reversal relied upon by counsel for plaintiffs in error is that the trial court improperly permitted the state to ask one of its witnesses, on redirect examination, the following question: "Is this man Merra the man you saw up there on Fifteenth street?" The sole ground of objection to the question was that it was leading. This fact, however, did not require the exclusion of the

question.  It is entirely settled that it is within the discretion of the trial court to determine whether or not it will permit a leading question to be put to a witness.  Moreover, in the present case, the witness to whom the question was addressed had already testified without qualification to the identity of Merra at the place referred to in the question and immediately after the murder had been committed.  In this situation of the proofs, even if we should have considered the ruling erroneous, we should not have felt justified in reversing the conviction on that ground, for the admission of the question could not have prejudiced the plaintiffs in error in maintaining their defense upon the merits.

Next, it is argued that the court erroneously permitted the state to show on the cross-examination of Merra, not only that he had been previously convicted of crime, but that he had been sentenced upon such conviction to five years' confinement in Sing Sing prison.  The argument is that the court ought not to have allowed the state to prove by the defendant's testimony the punishment inflicted upon him for the crime of which he had testified he had been convicted.  The propriety of the court's ruling upon this point is not doubtful.  In the case of *State* v. *Silver,* 101 *N. J. L.* 232, we held that the trial court might permit, on cross-examination of a witness as to his conviction of crime, such facts as would have been brought out if the conviction had been proved by the production of the record thereof, and pointed out that the record of the conviction would show not only the finding of guilt by the jury, but the sentence imposed upon that finding.

The next ground urged for reversal is that the trial court improperly allowed the prosecutor of the pleas to introduce in evidence certain articles found in the home of the plaintiffs in error.  There was no suggestion made to the trial court that these articles were not evidential on the question of the truth of the charge made against them; the sole ground upon which their exclusion was asked being that they were taken possession of by the police without a search warrant, and, consequently, in violation of the constitutional

right of the plaintiffs in error against unreasonable search
and seizure.   We consider the ground upon which the trial
court was asked to exclude the admission of these articles
in evidence was without merit; for it is entirely settled in
this state that property procured by an unjustifiable search
and seizure is admissible in evidence, if evidential *per se.*
*State* v. *Lyons,* 99 *N. J. L.* 301, and cases cited.

Next, we are asked to set aside these convictions on the
ground that the verdict upon which they rest is contrary
to the weight of the evidence.   Our examination of the testi-
mony satisfies us that this is not the fact.   If the jury be-
lieved the testimony offered on the part of the state, and
disbelieved that submitted on the part of the defendants
(and that they did this their verdict shows), they could not
have reached any other conclusion than that the plaintiffs in
error were guilty as charged.

The next ground upon which a reversal is asked is that
the court refused to charge certain requests submitted by
the defendants, and which, it is stated, contained nine prin-
ciples of law which were material to the issue which was
being tried.   An examination of the record, however, dis-
closes that there was not an absolute refusal to charge these
requests, but a refusal to charge them "except as they are
already charged."   Counsel for plaintiffs in error has not
attempted to point out in his argument which, if any, of
these requests were not charged in legal effect, and our in-
dependent examination of the charge itself satisfies us that
they were all of them charged, in substance, so far as they
were material and relevant.

Next, it is alleged that there was error in the following
excerpt from the charge: "If you believe beyond a reason-
able doubt that a robbery was being perpetrated on June
4th, and that Conway was murdered in the course thereof,
and also the witnesses who say that they saw the defendants
there, running away from the scene with a gun and at times
shooting, then you would be justified in returning a verdict
of guilty as against them.   If, on the other hand, you do not
believe these facts beyond a reasonable doubt, or you believe

the defendants and the witnesses for the defendants, who say that they were at another place at the time in question, then your verdict must be not guilty." The principal criticism by counsel is directed at the first part of this excerpt, namely, at the statement relating to the running away of the defendants, &c. The contention is that, by this instruction, even if the jury was not satisfied beyond a reasonable doubt by the evidence in the case that the defendants participated in the attempted robbery, and that one or more of them, or their associates, inflicted the injuries which resulted in death, nevertheless, the fact that the defendants were seen running away from the place of the holdup, and were shooting, would justify a verdict of guilty against them. In our opinion, a reading of this excerpt, in connection with other portions of the charge dealing with the question of reasonable doubt, demonstrates that the criticism upon it is unsubstantial. The charge as a whole made it perfectly plain to the jury that it would not be justified in convicting the plaintiffs in error unless it was satisfied that Conway was murdered in an attempt to perpetrate a robbery and that they took part in that attempt. In further criticism of the excerpt, it is said that the last part thereof destroyed the presumption of innocence and placed upon the defendants the burden of proving their innocence beyond a reasonable doubt. No argument is advanced by counsel for plaintiffs in error in support of this contention, and without assistance we are unable to see any basis upon which to rest it.

Finally, counsel asserts that there was error in the following instruction contained in the charge to the jury: "In order to find these defendants guilty of murder in the first degree—and let me say at this point that these defendants, under this indictment and under the evidence in this case, must either be found guilty of murder in the first degree or not guilty. They cannot be found guilty of any other crime." The argument of counsel, in support of this assertion, is that the excerpt from the charge above quoted is practically a direction of a verdict against the plaintiffs in error. The legal effect of this excerpt, when read in con-

nection with what just preceded and immediately followed it is plain. The instruction immediately preceding the excerpt was as follows: "In order to return a verdict of guilty against these defendants, or either of them, you must find affirmatively on three essential questions, and you must find, beyond a reasonable doubt, as I have before outlined it to you." Directly following the excerpt now being considered, the court stated what the three essential questions already referred to were as follows: (1) "You must first decide whether or not a robbery was being perpetrated or attempted to be perpetrated." (2) "If you find from the testimony that there was an attempt to perpetrate a robbery, the next question for you to decide is whether or not the murder of Theodore Conway ensued from the attempt to perpetrate the robbery;" and then stated that, if the jury found as a fact "that a robbery was being perpetrated, and that the victim, Conway, was murdered in the carrying out of this robbery, then the next [the third] question for you to decide is whether or not these two defendants were present, taking part in, or aiding, abetting or assisting in the perpetration of the robbery and the murder." It is apparent from a reading of the whole instruction, as above set forth, including the segregated portion which is made the subject of attack by counsel for the plaintiffs in error, that the legal rule applicable to the facts therein referred to was accurately stated therein, and that the contention that the portion thereof criticised by him was erroneous, because it was practically a direction of a verdict for the state, is without substance.

Our consideration of the questions presented for determination on this writ of error leads us to the conclusion that the judgment under review should be affirmed.

KALISCH, J. (dissenting). I cannot concur in the majority opinion of this court, holding that the verdict of the jury did not recommend life imprisonment for both of the defendants. The verdict as originally recorded was as follows: "We find the defendant Salvatore Merra guilty of

murder in the first degree and the defendant Salvatore Rannelli guilty of murder in the first degree, and recommend life imprisonment at hard labor." By the return to the writ of error the record was certified to by the trial judge as correct. When the case came before this court it was objected to on behalf of the state that the verdict of the jury was erroneously recorded. There is no doubt in my mind that the court in which a verdict is rendered has power in a civil case to mold the same in conformity with the issue tried, where the intention of the jury is clearly expressed and not ambiguous. But this rule is not applicable to verdicts in criminal cases. 1 *Chit. Crim. L.* 529, says: "The jury may also themselves rectify their verdict in the same stage of the proceedings, and it will stand as ultimately amended. Though they can neither be directed nor allowed to make any alteration after the verdict is recorded. But a general, like a special, verdict may be amended in matter of form, though not in any substantial degree."

And (on *p.* 527) this learned expositor of the criminal law says: "It seems to have been laid down, that in a capital case, a special verdict cannot be amended in matters of fact, yet the court may amend a mere error in form, even in capital cases, when there are any notes or minutes by which it can be amended."

In the present case there were no minutes nor notes by which the amendment could be made. Furthermore, the amendment in the present case was to a matter of fact and not as to the form of the verdict. Surely, it cannot be reasonably said that where the amendment of the verdict affects the life or death of the accused that such amendment is only as to the form of the verdict. In the civil cases relied on by the state, at the argument, authorizing the amendment of verdicts, it clearly appeared that such amendments were allowed so that the verdicts would be in conformity with the issues tried, but we are dealing here with a capital case.

It appears that after the verdict was rendered the jury was polled and each juror said: "I find the defendant Salvatore Merra guilty of murder in the first degree and the

defendant Salvatore Rannelli guilty of murder in the first degree and recommend life imprisonment."

Furthermore, it must be borne in mind that these defendants were tried for an offense in which capital punishment could be inflicted or life imprisonment; that section 107 of the Crimes act (*Comp. Stat., p.* 1780) expressly provides, "that the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict whether it be murder in the first degree or in the second degree." This section was amended in 1919 (*Pamph. L.* 1919, *p.* 303), by adding the following: "Every person convicted of murder in the first degree, his aiders, abettors, counselors and procurers, shall suffer death unless the jury shall by their verdict, and as a part thereof, upon and after consideration of all the evidence, recommend imprisonment at hard labor for life, in which case this and no greater punishment shall be imposed." Of course, the clerk in recording the verdict was not authorized to put in either periods or commas, and, therefore, the verdict must be read in its general sense gathered from the language used, and not twisted from its original meaning by punctuation.

It is important to note here that no case has been cited where a court ever undertook to amend a verdict rendered in a criminal case, after such verdict was recorded and the jury discharged.

Upon a rule issued by this court, to the trial judge, who presided at the trial, to certify what the verdict was, and this took place a considerable period of time after the case had been tried, the trial judge, after reciting the verdict as recorded in the record, says, it is not an accurate statement of the verdict rendered by the jury, notwithstanding that in the return to the writ he had certified to the accuracy of the verdict, and now certifies that the verdict of the jury was as follows: "We find Salvatore Merra guilty of murder in the first degree. We find Salvatore Rannelli guilty of murder in the first degree and recommend life imprisonment." Thus we find that the trial judge amends the verdict by putting a period after the sentence, "We find Salvatore Merra

guilty of murder in the first degree;" and follows this up by inserting, "We" in the place of "and" which was in the verdict originally rendered, "find Salvatore Rannelli guilty of murder in the first degree and recommend life imprisonment." So, by the art of punctuation it is attempted to make it appear now that Salvatore Merra was excluded from the recommendation of life imprisonment.

It does not appear that the trial judge had any notes of what the verdict was and the only inference is that he must have resorted to occult means, in order to recall the intonation of the voice of the foreman of the jury, his hesitation and pauses in order to portray what took place. To countenance such interference with verdicts of a jury, especially in a case involving life, is a serious inroad on the right of trial by jury. It renders verdicts unstable and leaves a citizen accused of crime at the mercy of judicial oppression. But even with the changes made in the punctuations in the certificate of the trial judge, it still leaves the verdict substantially as originally rendered. It is quite obvious that if the order of the names as appears in the verdict had been reversed, that is, instead of Merra's name being first, it had been last mentioned in the verdict, and if Rannelli's name had been first instead of last mentioned therein, the same argument would obtain, namely, that the recommendation of life imprisonment was intended for Merra, and not for Rannelli. The logical sequence of this situation is that the order in which the names of the accused appear in the verdict, determines the fact as to whom the recommendation of life imprisonment is to be applied. This to me seems to be preposterous. I am unwilling to consign a human being to death on any such hair splitting refinement.

These defendants were tried on an indictment charging them jointly with murder and the verdict was a joint verdict, and it is reasonable to believe that if the jury intended to impose a different punishment on Merra than on Rannelli, it would most likely have stated that it found Rannelli guilty of murder in the first degree and recommended life imprisonment and Merra guilty of murder in the first degree. The

recommendation of life imprisonment, coming after the statement of finding these defendants guilty of murder in the first degree, carried with it a recommendation of life imprisonment for both. I am unwilling to guess at what the intention of the jury was in delivering the verdict as it did. If it was intended to make a difference in the punishment to be inflicted on the defendants, the verdict, as given, does not express such intention, and if there be a doubt as to what was intended by the verdict, that doubt must be resolved *in favorem vitæ*. Therefore, my vote is for a reversal of the judgment, to the end that the record be remitted to the trial court and that a judgment of life imprisonment be imposed on the plaintiff in error Merra.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BLACK, KATZENBACH, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 13.

*For reversal*—KALISCH, CAMPBELL, JJ. 2.