35 N.J. Super. 136 (1955)
113 A.2d 208
IN RE A SEARCH WARRANT FOR ROOMS 1 AND 2 OF PREMISES 301-317 CLINTON AVENUE, NEWARK, N.J.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided March 25, 1955.
*138 Mr. George R. Sommer and Mr. Saul C. Schutzman, for petitioners Irving Berlin and Max Dimond.
Mr. Charles J. Tyne (Mr. James L. McKenna on the brief), for the New Jersey Law Enforcement Council.
CONLON, J.C.C.
This is a motion to quash a search warrant and for other relief. It is before the court on a petition and notice of motion entitled as above made on behalf of Irving Berlin and Max Dimond, trading as Arrow Amusement Company. Service of the notice and petition were acknowledged by the attorney for the New Jersey Law Enforcement Council which was represented on the motion. If there are any improprieties in the title of the cause or in the proper identification of the parties involved those matters will not be discussed since the merits of the proceedings were fully presented to the court without objection and augmented by a stipulation hereinafter referred to.
*139 The search warrant in question was a John Doe warrant issued by me on January 12, 1955 for the premises, rooms 1 and 2, No. 301-317 Clinton Avenue, Newark, N.J., and directing the search for and seizure of "all lottery paraphernalia * * * and item or items, if any such be found or intended to be used for any lottery purpose or any other illegal purposes."
The petitioners contend that:
(a) The warrant was insufficient on its face;
(b) The property seized is not that described in the warrant;
(c) There was no probable cause established in the affidavit to justify the issuance of the warrant; and that
(d) The warrant was illegally executed.
The first objection  that the warrant was insufficient on its face  is not pressed, and it will be held to have been abandoned. As to the second objection  that the property seized is not the property described in the warrant  there is nothing before the court upon which such a determination can be made. Apparently the petitioners' contention is that the items seized are not such as pertain per se to a lottery. That appears to be true, but at the oral argument the respondent contended that some of the papers seized could be evidential of the conduct of a lottery. There is no proof to the contrary. The petitioners do not explain their use of the premises in question nor the nature or significance of the items seized. They content themselves with the allegation that the items were their property "either as owners thereof or bailees of the same." With such an absence of proof the court declines to determine as a fact that the property seized is not within the scope of that described in the search warrant.
The third objection to the search warrant is that the affidavit upon which it is based contained no facts upon which the court could base a finding of probable cause that the law was being violated; that may be conceded, but on the other hand the petitioners concede  and the court finds as a fact  that the affidavit discloses reasonable grounds for suspicion *140 and belief that the law was being violated. To sustain their position the petitioners rely on cases emanating from our federal courts such as Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933), which held as follows:
"Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough."
The petitioners agree that the appellate courts of this State have not followed the principles adopted in the federal courts as stated in the Nathanson case, supra, but argue that this court should follow what may be described as the federal rule rather than the New Jersey rule. This the court declines to do. It is clearly bound to follow the rule that has been established and followed by our highest court for many years. That rule does not require that in order to justify the issuance of a valid search warrant there be presented evidence of probable cause of a violation of the law. The principle in effect in this State is thus expressed in Lane v. Pennsylvania R.R. Co., 78 N.J.L. 672 (E. & A. 1910), at p. 674:
"In cases of criminal prosecutions, `probable cause' means reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the accused is guilty of the offense with which he is charged."
The affidavit in the instant case clearly established circumstances from which it might reasonably be concluded upon the information and belief of the affiant that the lottery law was being violated in the premises in question. That is sufficient to justify the issuance of the warrant in this State.
The last contention of the petitioners is that the warrant was illegally executed, and that contention has merit since William F. Beegle who executed and returned the warrant *141 had no right to do so. The affidavit upon which the warrant was issued was made by Mr. Beegle who stated as follows:
"I am a detective of the New Jersey State Police. I have been assigned to investigate matters pertaining to the conduct of an unlawful lottery business in Essex County, New Jersey and elsewhere in New Jersey."
No mention was made in the affidavit of the New Jersey Law Enforcement Council. The warrant was directed to the "Sheriff, or any duly authorized law enforcing officer." The warrant was returned by the said Beegle who signed the return with the designation "Member of the State Police." However, in lieu of testimony on the subject a stipulation was filed as to the facts surrounding the status of Mr. Beegle. According to the stipulation he and his assistant Russell W. Camp were members of the New Jersey State Police; in November 1952 they were assigned by the then Attorney-General to perform their duties under the direction of the New Jersey Law Enforcement Council; effective July 1, 1953 the New Jersey Law Enforcement Council was separated from the Department of Law and Public Safety and given an appropriation by the Legislature for the performance of its work; since July 1, 1953 the Law Enforcement Council, out of its appropriation, has reimbursed the Division of State Police for the salaries and expenses of Beegle and Camp; the members of the State Police assigned to the Council perform their duties in accordance with instructions of the Council and report to the Council the results of the work done by them; and in addition they also report to the Division of State Police the number of hours worked, the number of miles traveled, the number of investigations made and in the event of arrests, file detailed reports of the arrests and the offenses.
From the foregoing stipulation it must be determined that at the time he executed the warrant the said Beegle was not acting in his capacity as a state trooper but was acting solely as an agent of the Law Enforcement Council. The petitioners contend that Beegle had no authority to execute *142 the warrant even in his capacity as a state trooper, but it is unnecessary to decide that issue for it is clear that he was not functioning in that capacity. If Beegle had been acting under the provisions of the act as originally enacted there might be some force to the argument that he was acting in his capacity as a state trooper, for the act provided that the Council was to obtain its assistance from the Attorney-General whose duty it was to assign such personnel to the Council but continue to pay therefor from his own funds. However, by the amendment of 1953 (N.J.S.A. 52:17B-43.7) the Council was made independent of the Attorney-General and the Department of Law and Public Safety and the State Police and received its appropriation directly from the Legislature. Thereafter it was an independent body and its employees were exclusively its own agents.
Since it has been determined that Beegle at the time he proceeded on the warrant was acting solely as an agent of the New Jersey Law Enforcement Council it follows as of course that he had no more authority than the Council, and that if the Council had no right to make searches and seizures or engage in similar police activities, then neither did Mr. Beegle.
The powers and functions of the Law Enforcement Council are derived entirely from "An act relating to law enforcement, establishing a Law Enforcement Council, defining its functions, powers and duties, and transferring certain appropriations," L. 1952, c. 253, p. 858, as amended by L. 1953, c. 182, p. 1467 (N.J.S.A. 52:17B-43.1 et seq). The fifth section of the act sets forth the functions, powers and duties of the Council, and, it being a creature of the Legislature can have no more or different powers than those prescribed in the statute. The statute meticulously sets forth the powers conferred upon the Law Enforcement Council. They are nine in number and are substantially as follows:
(a) Develop plans to eliminate the causes of crime and delinquency;
(b) Evaluate the criminal laws of the State and recommend improvements;

*143 (c) Appraise the administration, enforcement and operation of state and local laws and ordinances;
(d) Examine and audit the performance of all law enforcement agencies;
(e) Conduct investigations of law enforcement agencies so as to be able to advise the Governor, the Attorney-General, the Legislature and the public generally of the condition of law enforcement in the state;
(f) Conduct state-wide law enforcement conferences to the end that improvements may be recommended;
(g) Hold hearings with respect to all phases of its work;
(h) Consult and advise with the Attorney-General and submit to him recommendations with reference to law enforcement;
(i) Report to the Governor, the Attorney-General and the Legislature at least annually with respect to its findings and conclusions.
A reading of the foregoing section brings one clearly to the conclusion that the Council was created for the sole purpose of setting up an agency which would critically and objectively examine into all phases of law enforcement as it is carried on in the State to the end that deficiencies might be pointed out and recommendations for improvement made. Obviously, the Legislature did not intend to set up another law-enforcement unit which would have powers tantamount or paramount to those of the police or the county prosecutors or the Attorney-General. There is no suggestion in the act that the Council was endowed with any police powers whatever and no such provision can be read into it.
It is interesting to note that the statement which was attached to the bill when it was introduced bears out the foregoing interpretation. It indicates that the bill was designed to implement a recommendation which Governor Driscoll made in his Fifth Annual Message to the Legislature for the establishment of a Law Enforcement Council. The statement continues to quote the Governor's message in part as follows:
"Accordingly, I recommend the establishment of a Law Enforcement Council in the Department to be appointed by the Attorney General with the approval of the Governor and without regard to partisan consideration. The functions of the Council would, of course, develop in detail as it entered upon its work, but in broad outline it would have three fundamental purposes:

*144 (1) To develop plans and programs insofar as possible to eliminate the basic causes of crime;
(2) To review and evaluate our criminal laws for the purpose of making them more effective deterrents to crime;
(3) To examine and appraise on a continuous basis, the administration of all law enforcement facilities and, wherever necessary in its judgment, make such investigations as may be required to permit it to advise the Governor, the Attorney General, the Legislature and our citizens of law enforcement within the State. The Council should be given the power of subpoena and appropriate financial support."
As an agent of the Law Enforcement Council Mr. Beegle, when he undertook to execute the warrant in question had no statutory or common-law police power. He was not one of the persons to whom the warrant was directed and as a consequence he had no authority to execute it. Hence the search and seizure he made under the color of the warrant was unlawful.
It has thus been determined:
(a) That the warrant was sufficient on its face;
(b) That it has not been established by the petitioners that the property seized is not that described in the warrant;
(c) That there was sufficient ground set forth in the affidavit to sustain the issuance of the warrant; but
(d) That the warrant was illegally served and therefore the seizure unlawful.
The remaining question to be determined is what relief, if any, the petitioners are entitled to in view of the court's finding that the warrant was illegally served and the seizure consequently unlawful.
The first application of the petitioners is that the search warrant be quashed. Since it has been determined that the warrant was legal on its face and was legally issued that application is denied. However, since it has been determined that the warrant was illegally executed and the consequent seizure was unlawful, the petitioners are entitled to a formal finding to that effect and it will be so ordered.
The second application is that Beegle, all other members of the New Jersey State Police, the New Jersey Law Enforcement Council, the Attorney-General of the *145 State of New Jersey and the Prosecutor of Essex County all be enjoined from using the articles seized in any criminal proceeding, and the last application is that William F. Beegle, or such person in whose possession the articles seized are presently retained be ordered to return them to the petitioners. Neither of the foregoing remedies is available to the petitioners. It has been repeatedly decided in this State that articles which are evidential per se, though it appear on the trial that they were obtained by unreasonable search and seizure, are admissible in evidence notwithstanding. Likewise it has been uniformly held that the court has no jurisdiction on motion to order the return of property because it was seized by unlawful search and seizure. If such a remedy does exist it must be pursued in an appropriate action and not as part of a motion to quash the search warrant. Perhaps the most enlightening review of the authorities on the subject is contained in an opinion of Judge Flannagan sitting in the Essex County Court of Quarter Sessions, State v. Black, 135 A. 685 (1926), and not officially reported. It is referred to by Professor Wigmore as a "careful opinion," 8 Wigmore on Evidence (3rd ed.), p. 21 (note). Judge Flannagan reviews all of the decisions in this State and points out that the federal opinions are not applicable; that the Fourth and Fifth Amendments of the United States Constitution have no application to state courts, but are limitations upon the federal power alone; and that rules of evidence and practice established in federal courts to enforce their provisions have no binding effect on state courts. He points out that the administration of the law in New Jersey has always been practical and never over-sensitive to shield an accused and long ago adopted the rule that articles obtained illegally  whether contraband or not  are nevertheless admissible in evidence. State v. MacQueen, 69 N.J.L. 522 (Sup. Ct. 1903); State v. Gould, 99 N.J.L. 17 (Sup. Ct. 1923); State v. King, 132 A. 312 (not officially reported) (Sup. Ct. 1926); State v. Lyons, 99 N.J.L. 301 (E. & A. 1923).
As to the right of the petitioners to have the articles returned to them Judge Flannagan has this to say, at p. 688:
*146 "There is no statute in New Jersey authorizing the court on a motion to adjudicate the right to possession of personal property and to order returned such property alleged to have been illegally seized. Nor is there a single decision in the courts of our state where property has been on motion ordered returned because seized by unlawful search and seizure, or evidence illegally obtained suppressed on motion to do so. The attempt has been made a number of times, but in every instance the motion has been denied; and, while language favorable to petitioner's present contention has been used, it is all obiter dicta."
This principle has been recently re-affirmed by our Supreme Court, State v. Cicenia, 6 N.J. 296 (1951). The petitioners cite the case of State v. Condon, 40 N.J.L.J. 293 (O. & T. 1917). The relevant statements in that case are pure dicta and are made on the authority of federal opinions which, as already indicated, have no application.
Thus the federal rule forbidding reception into evidence of the fruits of an illegal search is not followed in New Jersey. In O'Regan and Schlosser, New Jersey Criminal Practice (rev. ed.), p. 228, it is strongly suggested that the New Jersey rule should be re-examined in an appropriate case or by legislation and made to conform to the federal rule. On the other hand, the federal rule is decried by another school of thought. Professor Wigmore calls the federal rule "misguided sentimentality" and makes this comment on it:
"For the sake of indirectly and contingently protecting the Fourth Amendment, this view appears indifferent to the direct and immediate result, viz., of making justice inefficient, and of coddling the law-evading classes of the population. It puts Supreme Courts in the position of assisting to undermine the foundations of the very institutions they are set there to protect. It regards the over-zealous officer of the law as a greater danger to the community than the unpunished murderer or embezzler or panderer. (8 Wigmore on Evidence (3rd ed), p. 36.)
Whatever be the merits of this controversy it goes without saying that the so-called New Jersey Rule is binding on this court unless and until it is altered by an appellate court or by legislation.
*147 The application of the petitioners to suppress the evidence in question and for an order directing its return to them is denied.
An order should be presented which, in order to clarify an appeal if there be one, will include a specific provision as to each application made.