43 N.J. Super. 303 (1956)
128 A.2d 743
HARRY ELEUTERI AND EDWARD DANLEY, PLAINTIFFS,
v.
GROVER C. RICHMAN, JR., ATTORNEY-GENERAL OF NEW JERSEY, AND MARTIN J. QUEENAN, COUNTY PROSECUTOR OF BURLINGTON COUNTY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 26, 1956.
*306 Mr. James M. Davis, Jr. (Messrs. Powell & Davis), attorney for plaintiffs.
Mr. Stanley Cohen, Deputy Attorney-General, attorney for defendants.
HANEMAN, J.S.C.
Defendant Grover C. Richman, Jr., Attorney-General of New Jersey, has moved for a summary judgment on the pleadings. For the purpose of this motion, the facts as pleaded in the complaint must be taken as true.
The complaint is in two counts. One relates to the plaintiff Harry Eleuteri, the second to the plaintiff Edward Danley. Although the details of the two causes of action vary somewhat factually, the issues raised are common to both. The complaint alleges that:
*307 The plaintiffs are residents and citizens of the State of New Jersey and entitled to the benefits and rights guaranteed by the Constitution and laws of this State and of the United States. Each of them possessed a dwelling house within the County of Burlington and each of them was subjected to a search which was illegal, as violative of both the Federal and State Constitutions. As a result of the unlawful search of the plaintiffs' properties, there was obtained by an unlawful seizure certain papers, documents and other property which was relied upon by the defendants to obtain indictments against the plaintiffs, charging them with bookmaking, and which the State of New Jersey relies and will rely upon as evidence against them in a trial of the said indictments.
Although the Constitution of the State of New Jersey guarantees to the plaintiffs the right to be secure in their persons, houses, papers and effects against unreasonable searches and seizures and against the violation of that right, by Article I and section VII, the courts of law of this State have ruled that evidence seized in a search and seizure which violates the State Constitution is nonetheless admissible at a criminal trial of those who own said property. The effect of said construction by the law courts in effect denies to the plaintiffs their right to be secure against unreasonable search and seizure.
The sole remedy they have is a civil action for damages against the officers who trespassed upon their property and against their persons in violation of the constitutional guarantee, and this remedy is not adequate.
They demand a judgment declaring that the searches and seizures complained of constitute an unconstitutional invasion of their persons and property, that the defendants be required to make a full disclosure and accounting of each and every item of property taken from the premises of the plaintiffs, and that they either be required to return it to them or deliver it to this court for destruction. They further seek a permanent injunction restraining the defendants from offering in evidence at the trial of the above indictments any of the papers, documents or property seized as above *308 set forth, and an injunction against any other and further similar searches and seizures in the future.
Plaintiffs further allege that:
The above acts constituted a violation of the rights guaranteed to them under the Fourth Amendment to the Constitution of the United States, and through the Fourteenth Amendment of the Constitution of the United States the violation is a taking of their liberty and property without due process of law. The defendants were obligated to take an oath to support the Constitution of the United States, and the threatened conduct of the defendants is indicative of an official conscience departing from the obligation of the oath required by the Constitution of the United States, and actually taken by the defendants.
By way of relief they demand an injunction, the effect of which would be to direct the official conscience of the defendants in such fashion as to be consistent with and in harmony with the due process of law under the Fourteenth Amendment, including the obligations of the defendants to observe the rights the plaintiffs enjoy under the Fourth Amendment to the Constitution.
We will deal first with the defendant's contention that the defendant Richman is immune from suit because he is the Attorney-General of the State of New Jersey and that, therefore, he is the alter ego of the State, and that as such, this suit is a suit against the State, since a judgment obtained will operate to control the action of the State.
The suit here brought does not deny the principle of the sovereign immunity from suit without its consent. This is not a suit against the State, since the gravamen of the action is the invasion of the personal and property rights of the plaintiffs by an officer of the State acting in an unconstitutional manner. The keeping of officers and agencies of the State within lawful bounds does not constitute a restraint upon state action. The cloak of immunity from suit is stripped from them when their acts constitute an illegal or unconstitutional violation of the plaintiff's rights. Abelson's, Inc. v. New Jersey State Bd. of Optometrists, 5 *309 N.J. 412 (1950); Interstate Milk Handlers v. Hoffman, 34 N.J. Super. 356 (App. Div. 1955); Howard Co. Jewelers v. New Jersey State Bd. of Optometrists, 133 N.J. Eq. 4 (Ch. 1943).
It is, therefore, here held that this basis of the defendants' motion is without merit.
It now becomes necessary to examine plaintiffs' complaint in order to ascertain whether it states a cause of action upon which relief can be granted.
At the outset it must be conceded that under the so-called Weeks doctrine, established by the United States Supreme Court in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), that in a federal prosecution of a crime, the Fourth Amendment to the United States Constitution bars the use of evidence secured through illegal search and seizure, but in a prosecution in a state court for a state crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure in violation of the Fourth Amendment. In Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, 1792 (1949), the court said:
"Accordingly, we have no hesitation in saying that were a State affirmatively to sanction such police incursion into privacy it would run counter to the guaranty of the Fourteenth Amendment. But the ways of enforcing such a basic right raise questions of a different order. How such arbitrary conduct should be checked, what remedies against it should be afforded, the means by which the right should be made effective, are all questions that are not to be so dogmatically answered as to preclude the varying solutions which spring from an allowable range of judgment on issues not susceptible of quantitative solution.
Granting that in practice the exclusion of evidence may be an effective way of deterring unreasonable searches, it is not for this Court to condemn as falling below the minimal standards assured by the Due Process Clause a State's reliance upon other methods which, if consistently enforced, would be equally effective. Weighty testimony against such an insistence on our own view is furnished by the opinion of Mr. Justice, then Judge, Cardozo in People v. Defore, 242 N.Y. 13, 150 N.E. 585. We cannot brush aside the experience of States which deem the incidence of such conduct by *310 the police too slight to call for a deterrent remedy not by way of disciplinary measures but by overriding the relevant rules of evidence."
The remedy here sought by way of injunction has been denied in applications to the federal courts. Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Doyle v. Webb, 237 F.2d 335 (3 Cir. 1956).
It must also be recognized that courts of law in this State have declared evidence illegally seized in an illegal search to be admissible in the courts of this State, State v. Haines, 103 N.J.L. 534 (Sup. Ct. 1927); State v. Lyons, 99 N.J.L. 301 (E. & A. 1923); Stern v. Merra, 103 N.J.L. 361 (E. & A. 1927); State v. Gould, 99 N.J.L. 17 (Sup. Ct. 1923); State v. Gillette, 103 N.J.L. 523 (Sup. Ct. 1927); State v. Guida, 118 N.J.L. 289 (Sup. Ct. 1937), affirmed 119 N.J.L. 464 (E. & A. 1938); State v. Alexander, 7 N.J. 585 (1951), and that such courts of law will not suppress the evidence so obtained on a motion. In re 301-317 Clinton Avenue, Newark, New Jersey, 35 N.J. Super. 136 (Cty. Ct. 1955); State v. Mausert, 88 N.J.L. 286 (E. & A. 1915).
The question of the adequacy of plaintiffs' remedy in a court of law is quite patently the primary matter to be considered in concluding whether relief may be accorded in this action. This action concerns itself not with a threatened violation but rather with an accomplished act. There is no factual allegation that the defendants contemplate a further illegal search and seizure, and this opinion will treat only of the other relief demanded and not of the relief against acts in futuro.
There are open to the plaintiffs several civil remedies in the courts of law for redress of an illegal search and seizure. First, an action of replevin or of trespass de bonis asportatis would lie, the original taking of possession by the defendants being unlawful or tortious ab initio. Baron v. Peoples National Bank of Secaucus, 9 N.J. 249 (1952); Hebrew v. Pulis, 73 N.J.L. 621 (E. & A. 1906). Second, a civil action for trespass quare clausum fregit.
*311 The plaintiffs, however, conceive that the relief thus accorded to them is inadequate. It is difficult to conceive why an action in replevin or trespass is an inadequate civil remedy, since they could receive both compensatory damages and punitive damages for the trespass, and could also obtain repossession of the articles taken.
Wherein do plaintiffs allege an inadequacy of the remedy at law? Not in the inability to recover damages for the alleged illegal search and seizure, nor in the inability to recover by replevin the articles of personalty tortiously seized. They allege that they seek a specific performance of a contract between the defendants and themselves, arising from constitutional provisions, and that the relief afforded in the law courts for a breach of this contract, i.e., a violation of their constitutional guarantees, is inadequate because the admission and use of evidence so seized, by the law courts, effectually voids or changes such guarantees.
Stripped of the fine-spun and ably presented arguments, what plaintiffs actually bottom their contentions of inadequate relief on, is their inability to suppress the evidence so obtained in the Law Division. They do not recognize the civil remedies in the law courts as any form of remedy. What they are saying is, that since they have been indicted upon the presentation of this evidence and may be convicted of the commission of a crime by reason of the use of this evidence, their remedy is inadequate. If this were not the final conclusion, the remedies at law would be inadequate. They are not stating that their remedy for the constitutional violation is inadequate, but rather that they have no adequate remedy to prevent the use of the articles so seized in a criminal action.
In effect, what the plaintiffs are urging is that the inadequacy of remedy lies in their inability to suppress as evidential the paraphernalia which might establish a prima facie case demonstrating their violation of the criminal law. They are seeking here to obtain relief indirectly, through the Chancery Division, through the instrumentality of a pseudo suit for specific performance and an injunction, which *312 they cannot obtain directly through a motion to suppress in the Law Division.
The mere fact that the law of evidence permits the admission of the exhibits here involved, and makes plaintiffs' objection thereto, or motion to suppress futile, is insufficient to force a conclusion that there is no adequate remedy at law. The real purpose of this action is to circumvent the laws of evidence in this State. Linn v. Neldon's Administrator, 23 N.J. Eq. 169 (Ch. 1872); Hoffman v. Maloratsky, 112 N.J. Eq. 333 (E. & A. 1933).
Ordinarily and normally an injunction does not lie against a threatened act merely because it is illegal or transcends the constitutional power if it does not inflict irreparable injury upon the plaintiff. United Fuel Gas Co. v. Railroad Commission, 278 U.S. 300, 49 S.Ct. 150, 73 L.Ed. 390 (1929); Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923); State Corp. Commission of Kansas v. Wichita Gas Co., 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500 (1934).
The plaintiffs must show not only that the act complained of is unconstitutional but that it will inflict an irreparable or irremediable injury. Newtex S.S. Corp. v. United States, 107 F. Supp. 388 (D.C.S.D.N.Y. 1952).
Generally, courts of equity should not interfere with criminal prosecutions save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent, and then generally only where property rights are involved. Bantam Books, Inc. v. Melko, 25 N.J. Super. 292 (Ch. 1953), modified 14 N.J. 524 (1954); Higgins v. Krogman, 140 N.J. Eq. 518 (Ch. 1947), affirmed 142 N.J. Eq. 691 (E. & A. 1948); Stefanelli v. Minard, supra.
No such irreparable injury, clear and imminent, is here present, unless it could be found in the possible conviction of the plaintiffs by use of the seized articles.
All of the cases cited by plaintiffs for the proposition that
"`Of all the rights of the citizens, few are of greater importance or more essential to his peace and happiness than the right of *313 personal security, and that involves, not merely protection of his person from assault, but exemption of his private affairs, books, and papers from the inspection and scrutiny of others. Without the enjoyment of this right, all other rights would lose half their value.'" Brex v. Smith, 104 N.J. Eq. 386, at page 390, quoting In re Pacific Railway Commission, 32 F. 241 (C.C.N.D. Cal. 1887)
were concerned with acts not yet accomplished. They concerned themselves with intended and threatened constitutional violations and not with accomplished acts. We have no dispute with the principles as outlined but they are inapplicable to the facts sub judice. The damage there contemplated could conceivably have been irreparable and irremediable. No irreparable or irremediable damage as here used has been shown by the plaintiffs.
Even though we should concede, for the sake of argument, that the violation of the constitutional guarantees causes irreparable and imminent damage to plaintiffs, this court should refuse to act.
The remedy of specific performance is not a matter of strict right but rather one of sound judicial discretion. In Gulvin v. Sunshine Park, Inc., 137 N.J. Eq. 249 (E. & A. 1945), the court said:
"The remedy is granted or denied as the justice and right of the particular case shall seem to the court to require upon the full consideration of the rights and equities of the respective parties."
See also New Jersey Highway Authority v. Renner, 18 N.J. 485 (1955).
The doctrine under which evidence obtained by illegal seizure through the instrumentality of an illegal search, as a result of decisional authority, has assumed the proportions of public policy. State v. Alexander, supra. Mr. Justice Cardozo, while sitting in the Court of Appeals in New York, in People v. Defore, 242 N.Y. 13, 150 N.E. 585 (1926), very ably and aptly discussed the policy behind the admission of evidence obtained as above set forth and, in part, said as follows:
*314 "Other sanctions, penal and disciplinary, supplementing the right to damages, have already been enumerated. No doubt the protection of the statute would be greater from the point of view of the individual whose privacy had been invaded if the government were required to ignore what it had learned through the invasion. The question is whether protection for the individual would not be gained at a disproportionate loss of protection for society. On the one side is the social need that crime shall be repressed. On the other, the social need that law shall not be flouted by the insolence of office. There are dangers in any choice. The rule of the Adams Case strikes a balance between opposing interests. We must hold it to be the law until those organs of government by which a change of public policy is normally effected shall give notice to the courts that the change has come to pass."
The Legislature is presumed to know the common law of the State. Yanow v. Seven Oaks Park, Inc., 11 N.J. 341 (1953); Magierowski v. Buckley, 39 N.J. Super. 534 (App. Div. 1956).
It does not behoove this court, in any event, to reverse, by an indirect means, the public policy of this State, which has been acquiesced in by the affirmative action of its highest court and by the inaction of the Legislature. The question of whether this policy should be reversed is one which should be left to our Legislature or to our highest court. Wolf v. People of State of Colorado, supra; State v. Alexander, supra.
Judgment will be entered accordingly for the defendants.