No. 122,772

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

COREY POSA,
*Appellant*.

SYLLABUS BY THE COURT

1.

When a defendant raises a constitutional challenge to a search or seizure by moving to suppress evidence, the State has the burden to prove the challenged police conduct was permissible. The State may meet this burden by proving facts warranting application of *Leon*'s good-faith exception to the exclusionary rule. Under *Leon*'s good-faith exception, the exclusionary rule should not be applied "to deter objectively reasonable law enforcement activity." *United States v. Leon*, 468 U.S. 897, 919, 924, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

2.

*Leon*'s good-faith exception may be defeated by a showing that a police officer's error in relying on court records was the result of recurring or systemic negligence. But proof of a five-day delay between the date a domestic hearing officer signed an order vacating a warrant and the date the district court signed and filed that same order is not recurring or systemic negligence that defeats application of the good-faith exception to the exclusionary rule.

1

3.

A judicial employee's mistake usually does not compel exclusion of evidence, because the exclusionary rule was crafted to curb police rather than judicial misconduct, court employees are unlikely to try to subvert the Fourth Amendment, and exclusion of evidence would not have any significant effect in deterring the error.

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed November 5, 2021. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and HURST, JJ.

GARDNER, J.: Corey Posa appeals his conviction for possession of methamphetamine, arguing the district court improperly denied his motion to suppress evidence. Police arrested Posa on a bench warrant that Posa told them had been vacated five days earlier by a hearing officer—he even showed them a carbon copy of the hearing officer's signed order before they arrested him. In a search incident to that arrest, police found methamphetamine in Posa's pocket. Posa moved to suppress the evidence, arguing the warrant was vacated so his arrest based on the warrant was illegal. But the district court denied that motion, finding the officers acted in good-faith reliance on confirmed information from dispatch that the warrant was valid—the warrant was not vacated until the hearing officer's order was signed and filed by the district court after Posa's arrest.

Posa raises three arguments on appeal: (1) that the Kansas Constitution does not recognize the good-faith exception to the exclusionary rule; (2) that officers acted with a "deliberate, reckless, or grossly negligent" disregard for his constitutional rights by

willfully ignoring the copy of the hearing officer's order that he gave them; and (3) that the five-day delay between the date the hearing officer signed the order vacating his warrant and the date the district court signed and filed that order so it could appear in the dispatch's system is systemic failure unexcused by the good-faith exception. For the reasons explained below, we agree that the good-faith exception to the exclusionary rule applies. We thus affirm Posa's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

At around 2 a.m. on February 26, 2019, City of Gardner Police Officer Kathrine Davidson stopped Posa for having an inoperable tag light on his vehicle. City of Gardner Police Sergeant David Rollf heard Davidson on the radio and came to assist. Rollf was familiar with Posa and remembered that Posa had an outstanding warrant for his arrest—it was standard practice for officers to make themselves aware of new or recent warrants in their jurisdiction. After arriving at the scene, Rollf contacted dispatch to give them Posa's information, and dispatch responded that Posa had an active arrest warrant through Johnson County. Rollf asked dispatch to confirm that warrant and requested instructions from the sheriff's office. Dispatch returned several minutes later confirming that the warrant was valid.

When Davidson told Posa of the warrant for his arrest, Posa responded that the warrant was not valid because it had been "dismissed." Posa then gave Davidson a carbon copy of a document, signed by a court hearing officer and dated five days earlier, stating the warrant had been vacated. It is unclear whether Davidson looked at the information, but she told Posa she would instead rely on the information from dispatch. She arrested him and told him she would investigate the matter again later.

Rollf searched Posa incident to his arrest and found in Posa's pocket a zip-lock baggie containing what Rollf believed was methamphetamine residue. Although he had

3

not given Posa *Miranda* warnings, Rollf asked Posa whether he had any other drugs or drug paraphernalia in his car, and Posa admitted that he had a bag under his driver's seat. When Rollf checked Posa's vehicle, he found a digital scale and another zip-lock baggie containing methamphetamine.

After Posa's arrest, Davidson placed Posa in a patrol car and rechecked the status of Posa's warrant. Davidson called Deputy Sheila Roe, court security for the Johnson County District Court, and asked whether the arrest warrant for Posa was still outstanding. Davidson explained that Posa had given her paperwork showing the warrant was vacated. Roe checked the court's record system but found no order vacating the warrant and told Davidson so. Davidson then transported Posa to the sheriff's office for booking. Once there, Davidson told the booking supervisor that Posa claimed the warrant was invalid and gave the supervisor a copy of Posa's document to make sure someone would look into it.

The Johnson County District Court had issued a bench warrant for Posa's arrest after he failed to appear in court on February 7, 2019, for a divorce proceeding. After Posa attended a purge of contempt hearing, a domestic hearing officer signed an order vacating the warrant and gave Posa a carbon copy of it dated February 21, 2019. But a hearing officer's order must be approved by a district court, and the district court did not sign and file the order vacating Posa's warrant until February 26th, about eight hours after Posa's arrest. As the district court found, "the bench warrant would not have been officially withdrawn until the district court judge's signature is entered and it is filed." So at the time of Posa's arrest, the records showed his arrest warrant was valid.

The State charged Posa with single counts of possession of methamphetamine and possession of drug paraphernalia. Posa moved to suppress the evidence obtained during his search incident to his arrest, arguing that his arrest was illegal because it stemmed from an invalid warrant. Posa also moved to suppress his incriminating statements and

4

the evidence obtained from his car, arguing that police found the evidence based on Rollf's pre-*Miranda* questioning.

At the suppression hearing, the State agreed that Posa's pre-*Miranda* statements and the evidence seized from his car should be suppressed, so it dismissed the possession of drug paraphernalia charge. Then, without conceding that Posa had been illegally arrested, the State argued that the evidence found in Posa's pocket was admissible under the good-faith exception to the exclusionary rule. Posa countered that no good faith was shown because clerical error caused the delay and officers unreasonably ignored the valid order Posa gave them, which showed the warrant had been vacated. The State countered that the evidence showed no clerical error but showed that the officers reasonably relied on the information from dispatchers.

Officers Davidson and Rollf testified. Rollf had worked as a police officer for over 21 years. He used a standard record check at every traffic stop, which uses two systems: a regional justice information system (REJIS) to search the Kansas City metro area and parts of Missouri; and the national system, NCIC, which checks for local and felony warrants. After he or dispatch locates a warrant by running a search through that system, dispatch contacts the "agency that holds that warrant to confirm its validity by physically looking at that warrant, wherever it may be." To confirm Posa's warrant, Rolff

> "[c]ontacted dispatch on the radio and provided [Posa's] biographical information. They advised that the computer system showed that he had an active warrant through Johnson County, Kansas, at which point [Rollf] asked them to confirm that warrant and requested instructions from [the] sheriff's office, and they returned several minutes later advising that the warrant was confirmed."

Davidson agreed that Rollf had run Posa's information and discovered an outstanding warrant but was not sure whether Rolff did a "double-check" of the

information. Still, after Posa's arrest, she decided to take the extra step of calling court security on her own initiative—that was not required by police department policy. She contacted court security to ask whether their system showed Posa's bench warrant was vacated. And after court security responded that their system did not show the warrant had been vacated, Davidson transported Posa to jail.

Davidson testified that when she gets information from dispatch, it is accurate. If she gets information from a suspect that conflicts with information from dispatch, she relies on dispatch because based on her training and experience, that information is "the most accurate, up to date." So when Posa gave her a document, she explained to him that they go by what dispatch tells them. Dispatch had already "confirmed the warrant, saying they had called Johnson County, Johnson County said it was good, so I defer to what my dispatch and the originating agencies say."

Rollf testified that information from dispatch is generally reliable. Many times suspects have told him they do not have a warrant, when his information says they do. His protocol is to rely on dispatch, who has confirmed the validity of the warrant. He did not rely on Posa's paperwork because he "had already received confirmation from the issuing agency that they wanted an arrest made on this warrant. My thought process is that document is secondary to the document the judges issue. It's also my experience that many documents are outdated or fraudulent."

Both officers testified that it is not uncommon for a suspect to dispute the validity of an active arrest warrant. At times, suspects give officers outdated or fraudulent documents to support their claims that a warrant is invalid. Davidson believed Posa's order vacating his warrant was somehow forged, counterfeit, or inaccurate. Suspects had given her fake driver's licenses or altered insurance cards before, but this was the first time a suspect had given her a "fraudulent" district court order.

6

Still, even if Davidson believed that the suspect's paperwork was accurate, she would not be "allowed to disregard" the information from dispatch and the court security officer. Rather, she had to arrest Posa based on the information she had. Davidson could not imagine a situation in which she would accept a suspect's evidence showing a warrant was invalid as more reliable than information from dispatch and court security.

The district court took judicial notice of the unfiled order vacating the bench warrant, signed by a hearing officer but not a district court judge. The district court found that although the hearing officer's order showed the warrant had been withdrawn—and Posa had a right to believe it was withdrawn—the warrant remained active in the court record until the district court signed and filed it several hours after Posa's arrest. As a result, the district court found that the officers erred by arresting Posa but still acted reasonably and in good faith in relying on the bench warrant. Applying the good-faith exception to the exclusionary rule, the district court denied Posa's request to suppress the evidence obtained though his illegal arrest.

Posa requested a bench trial on stipulated facts. After reviewing the evidence and the stipulated facts, the district court convicted Posa of possession of methamphetamine and dismissed the remaining count of possession of drug paraphernalia. The court imposed a 10-month prison sentence but suspended it and granted Posa 12 months of probation.

Posa timely appeals.

I.  KANSAS APPLIES A GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE.

Posa first argues that the Kansas Constitution does not recognize, and we should not recognize, a good-faith exception to the exclusionary rule.

But neither does the Kansas Constitution recognize the exclusionary rule, and we suspect Posa would not want us to jettison it. "The exclusionary rule is a judicially created remedy that prohibits the use of evidence obtained in violation of the Fourth Amendment [to the United States Constitution] to deter future violations." *State v. Baker*, 306 Kan. 585, 590, 395 P.3d 422 (2017). A trial court may apply the exclusionary rule and thus suppress "primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality," if it finds police obtained evidence in violation of the Fourth Amendment. *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984); see *State v. Deffenbaugh*, 216 Kan. 593, 598, 533 P.2d 1328 (1975) (explaining fruit of the poisonous tree doctrine).

"'The exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.'" *Brown v. Illinois*, 422 U.S. 590, 599-600, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975) (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 [1974]). And "suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Herring v. United States*, 555 U.S. 135, 137, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). Courts must thus balance the deterrent effect of suppressing evidence against societal harms when considering whether suppression is proper under the circumstances. 555 U.S. at 141.

The United States Supreme Court has recognized several exceptions to the exclusionary rule. It first recognized the good-faith exception in *United States v. Leon*, 468 U.S. 897, 920-21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). *Leon* held that the Fourth Amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. 468 U.S. at 922. Our

Supreme Court adopted and applied *Leon*'s holding without modification in *State v. Hoeck*, 284 Kan. 441, 463-64, 163 P.3d 252 (2007), disapproving two of its prior cases that inadvertently departed from *Leon* by requiring minimum probable cause to apply the good-faith exception: *State v. Longbine*, 257 Kan. 713, 896 P.2d 367 (1995), and *State v. Doile*, 244 Kan. 493, 769 P.2d 666 (1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). *Hoeck* recognized that it could extend state constitutional protections of section 15 of the Kansas Constitution Bill of Rights beyond the federal guarantees provided by the Fourth Amendment, but it declined to do so. 284 Kan. at 463.

The United States Supreme Court later extended *Leon*'s good-faith exception to include evidence obtained through an officer's reasonable reliance on a statute later found unconstitutional. *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987). And our Supreme Court followed suit, adopting the good-faith exception announced in *Krull* in *State v. Daniel*, 291 Kan. 490, Syl. ¶ 7, 242 P.3d 1186 (2010). *Daniel* adopted *Krull* based on its finding that it typically interprets the Kansas Constitution as coextensive with the United States Constitution. 291 Kan. at 498.

But the Kansas Supreme Court has not yet adopted *Arizona v. Evans*, 514 U.S. 1, 14-16, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995) (extending good-faith exception to officer's reliance on inaccurate court records), or *Herring*, 555 U.S. at 147-48 (extending good-faith exception to officer's reliance on negligently maintained police records). Those are the two cases most applicable here. But our court has considered similar claims and affirmed the district court's application of the good-faith exception, relying on those cases. See *State v. Soto*, No. 117,781, 2018 WL 5091886, at *4 (Kan. App. 2018) (unpublished opinion); *State v. Wooldridge*, No. 122,613, 2016 WL 463769, at *5 (Kan. App. 2016) (unpublished opinion); *State v. Davis*, No. 97,988, 2008 WL 2186177, at *3 (Kan. App. 2008) (unpublished opinion).

State courts are strictly bound by holdings of the United States Supreme Court. See *Evans*, 514 U.S. at 8; *State v. Tatro*, 310 Kan. 263, 272, 445 P.3d 173 (2019) (United States Supreme Court authority binding); *State v. Thompson*, 284 Kan. 763, 801, 166 P.3d 1015 (2007) (federal circuit authority persuasive). We are bound by United States Supreme Court precedent even when government action is challenged purely under the Kansas Constitution. 291 Kan. at 498. While the Kansas Supreme Court has the authority to extend section 15 constitutional protections beyond the protections of the Fourth Amendment, it has repeatedly declined to do so.

And we are also duty-bound to follow Kansas Supreme Court precedent absent some indication it is moving away from its previous position. *Tillman v. Goodpasture*, 56 Kan. App. 2d 65, 77, 424 P.3d 540 (2018). Posa contends that our Supreme Court is moving away from its repeated application of the good-faith exception in lockstep with the federal standard. See *State v. Perkins*, 310 Kan. 764, 771, 449 P.3d 756 (2019) (Luckert, J., concurring) (questioning "whether Kansas should continue to apply the good-faith exception in lockstep with federal caselaw"); see also *State v. Pettay*, 299 Kan. 763, 772-73, 326 P.3d 1039 (2014) (Johnson, J., concurring) (reiterating his disapproval of *Daniel*'s adopting *Krull* because it allows police to perform a judiciary function of interpreting statutes). But the doctrine of stare decisis binds us to follow the majority decisions, not concurrences. See generally *State v. Sherman*, 305 Kan. 88, 107, 378 P.3d 1060 (2016). We thus reject Posa's invitation to reject *Leon*'s good-faith exception, and we apply *Herring* and *Evans*, although the Kansas Supreme Court has not yet done so.

II.     THE DISTRICT COURT PROPERLY APPLIED THE GOOD-FAITH EXCEPTION.

Posa next argues that the district court erred by applying the good-faith exception because the officers failed to show their acts were objectively reasonable. Instead, Posa asserts their act of ignoring the carbon copy he gave them of the hearing officer's signed order vacating his warrant was deliberate, reckless, or grossly negligent. See *Herring*,

10

555 U.S. at 144 (excluding deliberate, reckless, or grossly negligent acts from good-faith exception).

*Standard of Review*

We review the factual underpinnings of a district court's decision on a motion to suppress evidence for substantial competent evidence and its ultimate legal conclusion de novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When, as here, the material facts are not in dispute, whether evidence should be suppressed is a question of law over which our review is unlimited. *State v. Stevenson*, 299 Kan. 53, 57-58, 321 P.3d 754 (2014).

Although a defendant begins a constitutional challenge to a search or seizure by moving to suppress the evidence in question, the State has the burden to prove that the challenged police conduct was permissible. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016). The government thus has the burden to prove facts warranting application of the good-faith exception. See *Leon*, 468 U.S. at 924 ("the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time"). So here, the prosecution bears the burden to show that the officer's reliance on the law enforcement records or court records is objectively reasonable. We presume a "well trained" law enforcement officer has "a reasonable knowledge of what the law prohibits," and we measure good faith by considering how a "reasonable" law enforcement officer would view the circumstances. 468 U.S. at 919 n.20, 922 n.23.

*Precedent Supports Applicability of Good-Faith Exception*

The State concedes that Posa's Fourth Amendment rights were violated when he was arrested and then searched. We offer no opinion on that issue—we are assuming, but

11

not deciding, that there was a constitutional violation. Cf. *Herring*, 555 U.S. at 139. With that assumption in hand, we ask whether the officers' conduct was deliberate, reckless, or grossly negligent, so that similar conduct could and should be deterred through exclusion.

After reviewing the primary objectives of the exclusionary rule—deterrence of future Fourth Amendment violations—the United States Supreme Court in *Leon* declined to apply the rule to evidence seized by officers relying in good faith on a search warrant later found to be unsupported by probable cause. 468 U.S. at 926. The *Leon* Court concluded the exclusionary rule should not be applied "to deter objectively reasonable law enforcement activity." 468 U.S. at 919.

> "[W]here the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.' *Stone v. Powell*, 428 U.S. at 539-540 (White, J., dissenting)." 468 U.S. at 919-20.

Courts must thus weigh the potential deterrent effect against the costs associated with exclusion when addressing motions to suppress evidence obtained by reasonable reliance on a search warrant. 468 U.S. at 922.

In *Herring*, the Supreme Court considered whether evidence should be suppressed if police personnel cause the error officers rely on in arresting a defendant. There, police officers in one jurisdiction checked with the warrant clerk in another law enforcement agency and were told that the defendant had an outstanding arrest warrant. So, the officers arrested the defendant. A search incident to arrest revealed methamphetamine and a pistol. Officers later learned that the warrant had been recalled five months earlier but the records had not been updated. 555 U.S. at 137-38.

12

Still, the Supreme Court held that exclusion was not warranted because the sheriff's conduct did not implicate the exclusionary rule:

"To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 555 U.S. at 144.

*Herring* rejected claims that the good-faith exception did not apply to negligent police behavior:

"Petitioner's claim that police negligence automatically triggers suppression cannot be squared with the principles underlying the exclusionary rule, as they have been explained in our cases. In light of our repeated holdings that the deterrent effect of suppression must be substantial and outweigh any harm to the justice system, *e.g.*, *Leon*, 468 U.S. at 909-910, we conclude that when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.' *Id.*, at 907-908, n.6. In such a case, the criminal should not 'go free because the constable has blundered.' *People v. Defore*, 242 N.Y. 13, 21, 150 N.E. 585 (1926) (opinion of the Court by Cardozo, J.)." 555 U.S. at 147-48.

With those authorities in mind, we turn to Posa's claim that the officers' acts were deliberate, reckless, or grossly negligent, rather than merely negligent. Contrary to Posa's position on appeal, the evidence shows that the officers' reliance on the information provided by dispatch was objectively reasonable and in good faith.

After dispatch told Rollf that Posa had an active arrest warrant, Rollf asked dispatch to confirm with the issuing agency whether the bench warrant was still active. Dispatch did so, confirming that Posa's warrant was valid before officers arrested him.

13

The order vacating the warrant was not signed by the district judge or filed, as is necessary to vacate the warrant, until about eight hours after Posa's arrest. And Davidson took the added step of contacting court security to later ensure she had not mistakenly relied on an expired warrant. Those are not the acts of a reckless, grossly negligent, or flagrant officer.

Both officers testified that suspects sometimes lie about the status of arrest warrants and offer fraudulent information or documentation to support their claims. Thus, believing the document Posa provided was possibly inaccurate, the officers acted in an objectively reasonable manner by deferring to the information provided by their dispatch and the warrant's issuing agency.

Posa argues that the officers willfully turned a blind eye to the copy of the hearing officer's order vacating his warrant, as neither officer looked at it before arresting him. Posa asserts that his case is like *United States v. Starnes*, 501 Fed. Appx. 379 (6th Cir. 2012) (unpublished opinion). In *Starnes*, the Sixth Circuit determined that the Ohio Adult Parole Authority (APA) was not entitled to a good-faith exception because it engaged in "flagrantly wrongful conduct" that *Herring* does not absolve. 501 Fed. Appx. at 387. There, after the defendant gave the APA a copy of a court order converting his sentence and releasing him from supervision, the APA contacted the presiding judge to say that its order was unlawful so the APA would continue to supervise the defendant. When the defendant did not report to his parole officer, the APA found the defendant in violation of his parole, arrested him, and searched his home. 501 Fed. Appx. at 382-83.

*Starnes* is readily distinguishable from Posa's case. The officers in *Starnes* knowingly acted contrary to a valid court order because they disagreed with it, then deliberately violated the order by searching Starnes' home. Unlike in *Starnes*, officers here enforced the court order based on information from dispatch that a reasonable officer would believe was reliable. See *Miller v. City of Nichols Hills Police Dep't*, 42

14

Fed. Appx. 212, 216 (10th Cir. 2002) (unpublished opinion) (collecting cases in which courts found "it was objectively reasonable for the officers to rely on the dispatcher's NCIC report" when making an arrest). Although Posa gave Davidson and Rollf a copy of a document that he reasonably believed showed that the warrant was vacated, the officers also acted reasonably in relying instead on information provided by dispatch and its computer database. See *Wooldridge*, 2016 WL 463769, at *5 (applying *Leon* framework and *Evans* and finding reliance on database used by dispatch objectively reasonable). Importantly, Rollf confirmed with dispatch that the warrant was valid before Posa was arrested. See *Davis*, 2008 WL 2186177, at *3 (applying *Evans* good-faith exception and noting officer "double-checked" warrant before executing arrest). So, officers complied with, rather than flouted, the court order here.

These facts are more like those in *Gilliland* and *Soto*. See *State v. Gilliland*, 60 Kan. App. 2d 161, 490 P.3d 66, *rev. denied* 314 Kan. ___ (2021); *Soto*, 2018 WL 5091886. In *Soto*, officers ran the license plate number of a vehicle, discovered an active warrant, confirmed the defendant was driving, and stopped the car. Although the defendant told officers that he had been arrested on the warrant nine days earlier and bonded out the day before, the officers still arrested him based on the warrant. During their search incident to the arrest, the officers discovered a bag of cocaine.

At the suppression hearing, the officers testified that the system they used to confirm the defendant's warrant was generally reliable and that they used their mobile computers daily. They also testified that some individuals lied about the status of their arrest warrants in similar situations. One of the officers conceded, however, that he could have waited to confirm the warrant with dispatch before searching the defendant but did not.

The district court denied the defendant's motion to suppress, finding the officers acted reasonably despite not waiting to confirm whether Soto was telling the truth when

15

he told them he had satisfied the warrant. 2018 WL 5091886, at *1. Relying on *Herring*, a panel of this court affirmed the district court, finding the good-faith exception applied to an erroneously unrecalled warrant. "There is no evidence Officer Halton or Officer Ediger had knowledge—from a source other than Soto—that Soto's warrant had been satisfied." *Soto*, 2018 WL 5091886, at *4.

In *Gilliland*, a dispatcher misread a computer screen and as a result erroneously told an officer who had conducted a traffic stop that the defendant's driver's license was revoked, although it was merely restricted. After a search incident to arrest, the officer found methamphetamine and drug paraphernalia. The district court found the dispatcher "made a mistake of fact, that the officer's reliance on the dispatcher's report was objectively reasonable, and that the good-faith exception to the exclusionary rule thus applied." 60 Kan. App. 2d at 163. On appeal, our panel agreed that the good-faith exception applied, noting that the "dispatcher was not an employee of the sheriff's department, and the officer had no reason to know of any previous errors in the dispatch system." 60 Kan. App. 2d at 173.

Here, Rollf testified that under department policy, after dispatch told him Posa had a warrant outstanding, he asked dispatch to confirm Posa's warrant with the issuing agency—dispatch did so and confirmed Posa's warrant was outstanding before officers arrested Posa. The officers' choice to rely on information they had confirmed from their dispatch, rather than information Posa gave them, was based on their training, their experience, and their understanding that it was the most accurate and up to date information available. Doing so was reasonable, not deliberate, reckless, or grossly negligent. Our finding that they acted in good faith is underscored by Davidson's acts after arresting Posa. She did not ignore Posa's document but took the initiative to make sure the dispatcher's system was correct by confirming the warrant's status with court security herself and by giving the booking supervisor a copy of Posa's document, asking the supervisor to follow up on Posa's claim that his warrant was invalid. Doing so went

16

beyond department policy, even though Davidson had no constitutional duty to independently determine the warrant's validity. See *Baker v. McCollan*, 443 U.S. 137, 145-46, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. . . . [W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent."). Nothing in the record suggests that these officers acted with a "deliberate, reckless, or grossly negligent" disregard for Posa's constitutional rights. We therefore reject this challenge to the district court's application of the good-faith exception.

## III. NO SYSTEMIC ERROR IS SHOWN.

In his final challenge to application of the good-faith exception, Posa argues that this case shows a systemic failure in the procedure used to quash civil warrants. Posa contends that the five-day delay between the date the hearing officer signed the order vacating his warrant and the date the district court signed and filed that order so it could appear in the dispatch's system is systemic failure unexcused by the good-faith exception. See *Herring*, 555 U.S. at 144 (excluding recurring or systemic negligence from the good-faith exception); *Evans*, 514 U.S. at 17 (O'Connor, J., concurring) ("Surely it would *not* be reasonable for the police to rely . . . on a recordkeeping system . . . that routinely leads to false arrests."); *Hudson v. Michigan*, 547 U.S. 586, 604, 126 U.S. 586, 165 L. Ed. 2d 56 (2006) (Kennedy, J., concurring in part and concurring in judgment) ("If a widespread pattern of violations were shown . . . there would be reason for grave concern.").

The record contains little relevant evidence on this issue. Both officers testified that the information from dispatch is usually reliable, so when a suspect offers conflicting information about a warrant, they rely on the fact that dispatch has confirmed the status

of the warrant. As Davidson said, they defer to dispatch because based on their training and experience, that information is "the most accurate, up to date."

Neither counsel asked much about systemic error or the possibility of it. But when defense counsel asked Davidson whether "there are situations where someone has valid paperwork and *your system* is wrong?" she replied "*Their system* is wrong. It has—this is the first time I've ever seen it happen, but it has happened." (Emphasis added.) Davidson thus agreed not that the police system was wrong, but that the court's system was wrong. Still, this is the only time she has seen it happen.

Although Posa invites us to find the five-day delay systemic, he offers no evidence to support that theory. No evidence shows why the delay here was five days, or whether that is the normal amount of time it takes for a hearing officer's order to work its way through the system to be signed and filed by the district court. We simply do not know whether a five-day delay is built into Johnson County's system of getting a hearing officer's order signed and filed. Even though Posa's warrant took five days to be vacated by the district court's order, a document from a hearing officer could likely be scanned into a database and approved by a district court in less than five days, and the court's procedures could require as much—we just cannot tell without evidence. So Posa's assertion of a systemic five-day delay inherent in the procedure used to quash civil warrants is unfounded.

To fill the evidentiary void, Posa asserts that the district court recognized that delay was built into the system because it found a hearing officer's order must be signed and filed by the district court. But the district court did not find any error, let alone systemic error, that would defeat application of the good-faith exception. To the contrary, the district court held that the warrant was "untimely unrecalled, not erroneously unrecalled," that the officers acted in good faith in relying on the information from their dispatcher, and that the good-faith exception applied because the circumstances were "not

18

indicative of . . . a systemic situation." The district court thus did not find that the five-day delay, which included a weekend, was typical or atypical, but it did find that the delay did not result from error and was not systemic. Posa thus shows only a single instance of a five-day delay, without showing its cause, and without showing any error. That is not systemic error.

And even if we presume that the delay was caused by a clerk's error in failing to timely get the hearing officer's order to a judge for signature and filing, rather than a systemic delay of five days, Posa fares no better. A one-time error cannot show the systemic error necessary to defeat application of the good-faith exception. In *Gilliland*, this court found no evidence showing the dispatcher's error was "routine or widespread" enough to establish a systemic failure:

> "Gilliland presents only one example of a one-time error. The record thus shows no evidence establishing that the error made here was systemic. Rather, the evidence shows that the dispatcher's negligence was isolated. Her mistake of fact was not deliberate, reckless, or grossly negligent conduct. Nothing shows that this erroneous report of Gilliland's driver's license status was part of recurring or systemic negligence by law enforcement, or a deliberate violation of Gilliland's Fourth Amendment rights. Rather, the dispatcher simply misread the computer screen which showed that Gilliland's CDL was revoked but his regular driver's license was restricted." 60 Kan. App. 2d at 174.

Here, too, if the delay was caused by a clerk's error in not following the standard procedures to get a hearing officer's order signed and filed by the district court, that one-time delay was necessarily not systemic.

But even if the five-day delay were systemic *and* resulted from error, that error was not attributable to the police, as would invite suppression. See *Davis v. United States*, 564 U.S. 229, 238, 131 S. Ct. 2419, 2427, 180 L. Ed. 2d 285 (2011) (basic insight guiding remedial inquiry is that deterrence benefits of exclusion vary with culpability of

19

law enforcement conduct at issue). Posa shows no police involvement and thus no police culpability in the delay between the date the hearing officer signed to vacate the warrant and the date the district court signed and filed that order. And it is most unlikely that a law enforcement officer would have any responsibility for getting a hearing officer's order to the district court judge for approval and filing. So even if there were some undue delay by a court employee in getting that done, the police bear no responsibility for it. We find no systemic error that would prevent application of the good-faith exception.

The Supreme Court addressed similar circumstances in *Evans.* There, the Court held the exclusionary rule did not apply when officers reasonably relied on an arrest warrant that a court's database erroneously listed as outstanding even though it had been quashed 17 days earlier. 514 U.S. at 4, 9-10. *Evans* held that a judicial employee's mistake did not compel exclusion because the exclusionary rule was crafted to curb police rather than judicial misconduct; court employees were unlikely to try to subvert the Fourth Amendment; and it did not follow that exclusion would have any "significant effect" in deterring the errors. 514 U.S. at 15.

> "First, we noted that the exclusionary rule was historically designed '"to deter police misconduct rather than to punish the errors of judges and magistrates."' *Krull*, 480 U.S. at 348 (quoting *Leon*, 468 U.S. at 916). Second, there was '"no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires the application of the extreme sanction of exclusion."' *Krull*, 480 U.S. at 348 (quoting *Leon*, 468 U.S. at 916). Third, and of greatest importance, there was no basis for believing that exclusion of evidence seized pursuant to a warrant would have a significant deterrent effect on the issuing judge or magistrate. *Krull*, 480 U.S. at 348." 514 U.S. at 11.

*Evans* noted: "As with any remedial device, the rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served. *Leon*, 468 U.S. at 908; *Calandra*, 414 U.S. at 348." 514 U.S. at 11. Cf. *Herring*, 555 U.S. at

20

142-143, n.3 (rejecting suggestion that *Evans* was entirely premised on a distinction between judicial errors and police errors).

Here, the officers' belief that the warrant was still outstanding was in good faith. Rollf learned that Posa had an outstanding warrant and checked to verify that the warrant was valid by asking dispatch to double check. Dispatch did so and told officers that the warrant was active. No evidence shows any error in law enforcement's database or that any delay in getting the hearing officer's order filed was because of a mistake by law enforcement rather than acts by the court or its employees. And no evidence shows a pervasive pattern of erroneous data entries in any database or system handling warrants. We have no basis to believe that exclusion of evidence seized under these circumstances would have a significant deterrent effect on the court or its employees. Thus, suppression of the evidence was not warranted.

*Conclusion*

This was not one of the situations in which the exclusionary rule's objective of deterring future constitutional violations would be most "'efficaciously served.'" *Leon*, 468 U.S. at 908. Finding no error in the district court's application of the good-faith exception, we affirm Posa's conviction.

Affirmed.